UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

    Plaintiff,

v.

STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, et al.,

    Defendants.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

OCT 19 2012

LAWRENCE K. BAERMAN, CLERK
MISC. CASE NO. BAKER-mc-65 GLS/CFH

DEFENDANTS' MOTION TO QUASH CHEVRON CORPORATION'S SUBPOENA TO MICROSOFT CORPORATION

## MOTION

Defendants Javier Piaguaje Payaguaje, Hugo Gerardo Camacho Naranjo, Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC file this motion to quash the non-party subpoena Chevron Corporation served on Microsoft Corporation seeking production of records concerning the identity and email/internet usage of the users of thirty email addresses, including attorneys representing Piaguaje and Camacho in litigation in Ecuador. The Court should quash these subpoenas because they (1) call for the production of email correspondence in violation of federal law, (2) are overly broad because they seek nine years of information that is in no way relevant to the claims and defenses now pending in the Southern District of New York and much of which may be privileged, and (3) demand production of users' private information.

I.    FACTUAL BACKGROUND

Chevron's nonparty subpoenas open a new front in the all-out war it has waged against residents of Ecuador's Amazonian rainforest because those residents demanded that Chevron be

held accountable for the environmental devastation and despoliation of their homeland caused by decades of substandard oil field operations. Chevron declared this war after it got what it asked for—the 2002 dismissal on *forum non conveniens* grounds of a lawsuit brought by these residents against Chevron's predecessor Texaco[1] in federal court in New York. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002). Following that dismissal, the case was filed against Chevron in Ecuador, and—after another decade of litigation—the Ecuadorian court entered a $19 billion dollar judgment against Chevron. Chevron filed suit in the Southern District of New York against the Ecuadorian Plaintiffs[2] and their lawyers, experts, and others associated with exposure of the Ecuadorian oil pollution alleging nine different causes of action. The suit included RICO and tort claims and sought a declaratory judgment that the Ecuadorian judgment was unenforceable and a worldwide injunction against enforcement of the judgment. After Chevron's declaratory judgment claim was severed, the Court of Appeals for the Second Circuit vacated the district court's preliminary injunction against enforcement and ordered Chevron's declaratory relief claim dismissed in its entirety as legally baseless. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 (2d Cir. 2012).

The pollution of Ecuador's Amazonian rainforest—the harm which prompted the lawsuit against Chevron—is indisputable. Audits by U.S. environmental consulting firms commissioned by Chevron identified hydrocarbon contamination of the rain forest and river basin at all Chevron production stations and a majority of drilling sites in Ecuador's Oriente region, documented Chevron's use of unlined pits containing toxic chemical waste associated with

---

[1] For the sake of convenience, Chevron and its predecessor Texaco will be referred to collectively as "Chevron."

[2] The Ecuadorian Plaintiffs are the 47 individuals named as plaintiffs in the Ecuadorian litigation against Chevron. Piaguaje and Camacho are two of the named plaintiffs in the Ecuadorian litigation.

drilling and crude oil, the contents of which pits routinely spilled into the rivers and streams of the concession. Chevron's Ecuadorian lawyer admitted that Chevron discharged more than 16 billion gallons of untreated production water into Ecuador's rivers and streams, and it is undisputed that Chevron discharged the waste products from many of the production stations in the Napo Concession, including human sewage from Chevron's workers, into the rivers and streams. Chevron's drilling practices for thirty years in the Napo Concession violated Ecuadorian and United States environmental laws as well as standard industry practices. Chevron's operations would not have been permitted in the United States but, in a classic case of corporate imperialism, the company thought it would escape notice and responsibility if it cut corners deep in the jungle, regardless of injury to the lives and land of the indigenous peoples living there. These violations and the resulting contamination formed the basis of the suit in Ecuador.

Even before the Ecuadorian court issued the judgment against Chevron, Chevron filed its present RICO and third-party fraud claims in the Southern District of New York—the same court Chevron had fought to avoid a decade earlier. Lacking any defense on the merits—the pollution indisputably occurred and unlike the recent BP spill in the Gulf of Mexico, Chevron's pollution occurred in the middle of inhabited and environmentally sensitive land—Chevron has turned to bashing the lawyers and the Ecuadorian judicial system. Paying its law firms well over $100 million to wage this worldwide battle, Chevron has brought more than two dozen independent actions in courts around the country seeking to harass and burden anyone associated with the case through discovery actions. In its latest iteration of that effort, Chevron has issued three subpoenas seeking user and usage information on more than one hundred email accounts, including the subpoena to Microsoft (attached as Exhibit 1). Simultaneous subpoenas directed to

Google and Yahoo regarding other accounts were served in the Northern District of California, in which a similar motion to quash is now pending.

The present subpoena seeks all documents related to "(A) the identity of the user" of each email address and (B) "the usage of" the email address, including "IP logs, IP address information at the time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the email or Internet usage of the email address." *See* Ex. 1, Schedule A, at 2. Chevron's definition of "document" incorporates "correspondence" and "electronic mail messages." *Id.* at 1.[3] The subpoena covers all records for the past 9 years and purports to require rolling production of each user's future email and internet usage with no end date. *Id.* at 2. The email addresses include at least two Ecuadorian attorneys who represented Piaguaje and Camacho in the Ecuadorian litigation, Julio Prieto (julprieto@hotmail.com) and Juan Pablo Saenz (juanpasaenz@hotmail.com). *Id.*

## II.   ARGUMENT

Chevron's subpoena to Microsoft should be quashed because it demands production of email communications in violation of federal law, is overly broad, calls for the production of irrelevant and privileged material, and invades the privacy rights of the email address users.

---

[3] Recent correspondence from Chevron to Defendants' counsel claims that Chevron's subpoenas are not intended to seek "email content or internet searches." *See* Declaration of Garland Murphy ("Murphy Decl."), Ex. E at 1. This new position would seem to deviate from Chevron's written definition of "documents" in its subpoena to Microsoft. But to Defendants' knowledge, Chevron has not sent an amended subpoena to reflect any new definitions or modified instructions or even agreed in writing to limit the scope of the present subpoena. Thus the subpoena in play, as currently written, continues to request from Microsoft all responsive correspondence, email messages, and "all information stored in an electronic form or computer database" from 2003 to the present and continuing on after the date of production. *See* Ex. 1; Schedule A at 1–2.

### A.     The Court should quash the Microsoft subpoena in its entirety.

These are unusual circumstances. This subpoena and the two others served concurrently continue a pattern of ambush and intimidation that knows no bounds. Chevron has already threatened to make one email address owner a RICO defendant in the New York proceeding. Chevron apparently hopes that the non-party email address owners will not file objections, whether out of confusion, the assumption that Microsoft as the direct target of the subpoena will object, lack of notice, or intimidation. Chevron will then trot out its oft-used waiver arguments, hoping the Court will simply overlook the egregious nature of requests that seek nine years of email and internet usage data without regard to the data's relevance or the privacy interests of the email users.

Defendants therefore urge this Court to adopt the approach used in *Semtek Int'l, Inc. v. Merkuriy Ltd.*, No. 3607 DRH, 1996 WL 238538 (N.D.N.Y. May 1, 1996), and find that "the subpoena is overbroad on its face and exceeds the bounds of fair discovery." *Semtek* at *2 (internal citations and punctuation omitted); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (same). This Court, like the *Moon* court, should quash this subpoena to a non-party in its entirety based on the following objections of Defendants. 232 F.R.D. at 638 (granting motion to quash subpoena to nonparty based on objections raised by defendants); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) (noting the irrelevance of documents sought by non-party subpoena to which party objected); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (quashing subpoena to non-party on motion of defendants because material sought was irrelevant). At the very least, the Court should quash the subpoenas on grounds of privilege as to the accounts owned by Piaguaje's and Camacho's attorneys Julio Prieto and Juan Pablo Saenz.

      **B.**    **Chevron's subpoena calls for production of the contents of electronic communications in violation of federal law.**

The Stored Communications Act (the "Act"), 18 U.S.C. § 2701 et seq., prohibits the disclosure of the contents of users' communications by an electronic communication service provider. 18 U.S.C. § 2702(a). Microsoft is an electronic communication service provider subject to the Act, *see United States v. Weaver*, 636 F.Supp.2d 769, 770 (C.D. Ill. 2009) (finding that Microsoft, which provides email services through Hotmail, is a service provider under the Act); *see also Glazer v. Fireman's Fund Ins. Co.*, 11 CIV. 4374, 2012 WL 1197167, at *2 (S.D.N.Y. Apr. 5, 2012) (acknowledging same), and Chevron's subpoena violates the Act's prohibitions.

As written, Chevron's subpoena to Microsoft calls for the production of all email correspondence for a nine year period for every listed email address. Schedule A to the subpoena demands production of "All DOCUMENTS" related to the identity of the user of each email address *and* the usage of that email address. Ex. 1, Schedule A at 2. "DOCUMENTS" is a defined term under the subpoena, and its definition includes all "correspondence" and "electronic mail messages." Ex. 1, Schedule A, at 1. Obviously, an "electronic mail message" relates to the usage of an email address. Similarly, the subpoena calls for production of the "means of recording information concerning the email . . . usage of the email address." Ex. 1, Schedule A, at 2. Once again, the email messages themselves are a primary means of recording information concerning the usage of an email address. Thus, the subpoena as written calls for production of the substance of email communications in violation of the Stored Communications Act, and the Court should quash the subpoena. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 976 (C.D. Cal. 2010) (rejecting argument that the SCA permits the disclosure of the contents of communications pursuant to a civil discovery subpoena); *In re Subpoena Duces Tecum to AOL,*

*LLC*, 550 F. Supp. 2d 606, 611-612 (E.D. Va. 2008) (noting that the Act does not authorize disclosure of communications pursuant to a civil discovery subpoena). Though Chevron insists that the subpoenas do not call for email communications, it has not modified the subpoena to make that clear.

### C. Chevron's subpoena calls for production of privileged information to which Chevron is not entitled.

The subpoena also calls for disclosure of privileged information, including information to which Chevron is not entitled according to the court in the Southern District of New York. Of course, the Court may quash a subpoena that seeks disclosure of privileged information. *See Jones v. Hirschfield*, 219 F.R.D. 71 (S.D.N.Y 2003) (quashing subpoena where witness would not have any non-privileged, relevant information). For example, in the Southern District action Chevron requested disclosure of documents concerning travel to countries other than Ecuador by Donziger and other attorneys representing the Ecuadorian Plaintiffs. Murphy Decl., Ex. B (Non-Party Patton Boggs LLP's Responses and Objections to Plaintiff's Subpoena to Produce Documents), at 45 (Request No. 4), 50 (Request No. 6). Chevron also requested documents concerning enforcement activities in other countries. *Id.* at 140 (Request No. 39), 154 (Request No. 46). In recent hearings over objections to a subpoena issued by Chevron to Patton Boggs, the court in the Southern District of New York sustained objections to such requests. Murphy Decl., Ex. C at 22:25-20 (Request No. 4), 25:1-6 (Request No. 6); Murphy Decl., Ex. D at 25-26 (Request No. 39), 30 (Request No. 46). Here, Chevron seeks documents which would reveal the locations from which email accounts were accessed and could potentially reveal, by providing information on foreign travel up to the present day and beyond, information about enforcement activities and the Ecuadorian Plaintiffs' enforcement strategy, even though the court in the Southern District has already ruled that Chevron is not entitled to such information. The

{M0647270.1}

6

enforcement activities and strategies of the Ecuadorian Plaintiffs and their attorneys are protected by the attorney-client privilege and work product protection and are not relevant to Chevron's claims and defenses. Defendants Piaguaje and Camacho therefore object to disclosure of any privileged or protected information, and the Court should quash the subpoena.

### D. Requests for email and internet usage information for the past nine years and on a going forward basis are overly broad on their face and irrelevant.

Aside from the violation of federal law and the production of privileged information, the Court should quash the Microsoft subpoena because it is overly broad on its face and calls for the production of vast amounts of irrelevant material. Federal Rule of Civil Procedure 45(c)(3) authorizes the Court to quash subpoenas in such circumstances.

In evaluating whether a subpoena poses an undue burden under Rule 45, the Court considers "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (internal quotation marks and citation omitted). An analysis of these factors reveals that the Microsoft subpoena is "overbroad on its face" as it "sweepingly pursues material with little apparent or likely relevance." *Id.* (granting motion to quash subpoena on non-party where document requests went beyond any reasonable attempt to identify documents pertinent to the subject matter of the case).

On its face, the subpoena represents a fishing expedition of global proportions. The time period covers nine years and is a continuing request, meaning that the subpoenas call for production of nine years of records of internet and email usage *regardless of the purpose or subject matter of such usage* and also demand continued production *for an unlimited time period* of *future* records that document any time the owner of one of the thirty email addresses at issue

{M0647270.1}                                                7

logs onto an online Microsoft service, performs an internet search, or composes an email, and the user's whereabouts when doing so.[4] *See, e.g.*, Ex. 1, Schedule A, at 2 (Instruction 6). The documents sought are not described with particularity: "All DOCUMENTS related to the identity of the user" and "All DOCUMENTS related to . . . the usage of the . . . email addresses" including "other means of recording information concerning the email or Internet usage of the email address." *See, e.g., id.* at 2. These requests are overly broad on their face and exceed the bounds of fair discovery.

This Court's decision in *Semtek* is instructive. There, the Court quashed a subpoena to a nonparty that improperly required production for an extended period of time, included documents beyond the scope of the actual underlying proceeding, and touched on sensitive and ultimately irrelevant materials. *Semtek*, 1996 WL 238538 at *2. Here, Chevron did not limit its request to email or internet usage that pertains in some way to Chevron or the litigation in Ecuador. Instead, it intends to hoover up the details of every communication a user had with family, friends, business associates, employers, and significant others, as well as the details of every internet search performed by the email user for nine years. Next, Chevron demands the details of the internet searches a user performs and the emails a user sends and receives *tomorrow and the next day.* Chevron makes these demands even though the events at issue in its Amended Complaint extend only through early 2011, and Chevron has insisted that it need not produce documents in discovery that post-date February 14, 2011, the date the judgment in Ecuador was issued. Murphy Decl., Ex. A (Chevron Corp.'s Objections and Responses to

---

[4] Chevron denies that the subpoena calls for production of information created after the subpoena's return date, but Chevron has previously taken the position that a subpoena *did* call for the production of documents created after the subpoena's return date. Defendants therefore require a ruling from the Court or a stipulation from Chevron that definitively resolves the issue. Defendants have asked Chevron to propose modifications or alterations to clarify the scope of the subpoena—temporal or otherwise—but Chevron has not.

[Donziger Defendants'] First Request to Plaintiff for the Production of Documents), General Objection No. 9.

Though Chevron is prohibited by law from obtaining the contents of email communications, the very fact of the communications and their details—where they originated, from what device, who they were sent to, and where they were received—are irrelevant to the claims and defenses pending in the Southern District of New York. So too, the subject and details of any internet searches performed by the email address owners are irrelevant. For example, IP address logs and user billing information have no possible relevance to Chevron's RICO and third party fraud claims about the conduct of litigation in Ecuador over claims of environmental devastation caused by Chevron in Ecuador. Certainly information about email and internet usage that postdates the filing of Chevron's lawsuit in January 2011 and the Ecuadorian Court's judgment on February 14, 2011 is not relevant. Because the information sought, to the extent it could be produced without violating federal law, is irrelevant,[5] it is beyond the scope of permissible discovery. *See Haber*, 272 F.R.D. at 382 ("[Plaintiff] is attempting to use the discovery process as a vehicle to investigate matters unrelated to the allegations in the amended complaint. He is not permitted to do so."). Chevron's overbroad subpoena thus imposes an undue burden. *Concord Boat*, 169 F.R.D. at 51 (finding that a facially overbroad subpoena "falls within rule 45(c)(3)(A)'s prohibition on subpoenas that subject a witness to 'undue burden'").

At the very least, the Court should require Chevron to provide its intentions for the requested information. *See Haber*, 272 F.R.D. at 382 ("Where a party has subpoenaed a non-

---

[5] The Stored Communications Act forecloses production of only those non-substantive records that relate to communications about Chevron or the Ecuadorian litigation. The production of such records would require disclosure of the contents of the communications because the production would necessarily reveal the subject matter of the communications.

party, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings"). Such information would permit the Court to evaluate whether these subpoenas are "reasonably calculated to lead to admissible evidence" or intended solely for harassment. Given that Chevron's subpoenas to three email providers has requested information on email addresses belonging to Defendants, Defendants attorneys, a law professor who once exchanged two emails with Steven Donziger,[6] and the son of an Ecuadorian official,[7] there does not appear to be any coherent justification for its scattershot approach. Indeed, Chevron has already requested the only relevant information—essentially demanding production of all emails concerning the Ecuadorian litigation—from Defendants in the New York litigation, and document production is ongoing. There is no need for the non-party subpoena to Microsoft. Chevron could have contacted any of the email users—if there were questions about the user's identity and connection to the Ecuador litigation—*using the email addresses included in the subpoena*. Instead, it chose to issue blunderbuss subpoenas to Microsoft, Google, and Yahoo!. This is not an appropriate approach to discovery.

E. **The subpoena seeks users' private, protected information.**

Next, the Court should quash the Microsoft subpoena because it requests private, protected personal information. An individual has a privacy interest in preventing release of his or her name, address, financial information, online profile, and email. *See, e.g., Hopkins v. U.S. Dept. of Housing and Urban Development*, 929 F.2d 81, 87 (2d Cir. 1991) (privacy interest in

---

[6] *See* Kevin Jon Heller, My Encounter with a Chevron Subpoena – and the ACLU's Assistance, available at http://opiniojuris.org/2012/09/28/my-encounter-with-a-chevron-subpoena-and-the-aclus-assistance ("Chevron was merely trying to harass and intimidate me.").

[7] The subpoena's request for documents related to faisal_baki@hotmail.com appears to refer to Faisal Baki, the son of the former Ecuadorian Minister of Trade, Ivonne Baki. *See* Ex. 1, Schedule A, at 3.

name, address, and financial information); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 561 (S.D.N.Y. 2008) (recognizing reasonable expectation of privacy in password-protected Hotmail accounts and prohibiting access of user's information without consent); *Crispin*, 717 F. Supp. 2d at 974 (recognizing privacy interest in internet account profile and webmail). The owners of the email addresses in the Microsoft subpoena have clear, recognized privacy interests in their email accounts and in the records of their email and internet usage.

The Microsoft subpoena calls for production of each email user's name, address, billing information, account information, and email and internet usage. Ex. 1, Schedule A, at 2; Ex. 2, Schedule A, at 2. There is no justification for the production of this private information. For example, an account's billing information—sensitive financial information—has nothing to do with Chevron's RICO or third-party fraud claims now pending in the Southern District of New York. Nor is such information reasonably calculated to lead to admissible evidence.[8]

---

[8] The Microsoft subpoena may also violate users' First Amendment rights merely by seeking specific identifying information of the users. Production of nine years of internet and email usage as well as future internet and email usage cannot help but have a "significant chilling effect on Internet communications and thus on First Amendment rights." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001). American courts have long recognized the First Amendment protection of anonymous speech, the exchange of ideas online, and the use of telecommunications as a soapbox. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (cataloging Supreme Court cases acknowledging such forms of protected speech). Thus, "[t]o the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity." *Id. Arista* concerned the protection of the anonymity of online activity, and the Second Circuit, acknowledging the First Amendment rights involved, adopted a standard for the evaluating a subpoena calling for disclosure of the identities of non-parties. *Id.* at 119. That test involves five factors:

1. the concreteness of the plaintiff's showing of a prima facie claim of actionable harm;
2. the specificity of the discovery request;
3. the absence of alternative means to obtain the subpoenaed information;
4. the need for the subpoenaed information to advance the claim; and
5. the party's expectation of privacy.

*Id.* The standard as applied to non-parties—as here—should be even higher, as the *2TheMart.com* court held. *2TheMart.com*, 140 F. Supp. 2d at 1097 (imposing additional requirements: (1) the subpoena seeking the information must be issued in good faith and not for any improper purpose; (2) the information sought must relate to a core claim or defense; (3) the identifying information must be directly and materially relevant to that claim or defense; and (4) information sufficient to establish or to disprove that claim or defense must be unavailable from any other source). Chevron's subpoena fails the test. Here, Chevron has not presented any prima facie showing of the harms that the subpoena is meant to combat. The subpoena is also "extremely broad," showing an "apparent

## III. CONCLUSION

The Court should therefore quash Chevron's subpoena to nonparty Microsoft Corporation. The subpoena is unnecessary, extremely overbroad, calls for production of email communications in violation of the Stored Communications Act, demands production of privileged information and reams of irrelevant information, and violates the privacy rights of email users.

Dated: October 19, 2012

Respectfully submitted,

**MAYNARD, O'CONNOR, SMITH & CATALINOTTO, LLP**

By: /s/ Justin W. Gray
      Justin W. Gray
Bar Roll No. 516634
*Attorneys for Defendants Javier Piaguaje Payaguaje, Hugo Gerardo Camacho Naranjo, Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC*
6 Tower Place
Albany, New York 12203
Telephone (518) 465-3553
Facsimile (518) 465-5845
Email: gray@maynardoconnorlaw.com

---

disregard for the privacy and First Amendment rights of the [email] users." *2TheMart.com*, 140 F. Supp. 2d at 1095-96. Chevron has not established that the information it needs to establish its supposed claims is unavailable from an alternative means. Also, the identity of these users is not needed to advance Chevron's claims and is not directly and materially relevant to such claims. Finally, email users expect their email accounts to remain private, and many subjects of the subpoena surely anticipated a high degree of privacy, as shown by the apparent use of aliases. Certainly no user expects its email provider to make a continuous disclosure of internet usage and precise geographical data. Thus, the Court should quash Chevron's subpoena because, besides seeking irrelevant information, it threatens the First Amendment and privacy rights of the non-party email users.

       */s/ Ty Doyle*
Tyler G. Doyle (application pending)
Craig Smyser (pro hac vice application forthcoming)
Larry Veselka (pro hac vice application forthcoming)
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
Email: tydoyle@skv.com

*Attorneys for Defendants Javier Piaguaje Payaguaje and Hugo Gerardo Camacho Naranjo*


       */s/ John W. Keker*
John W. Keker (pro hac vice application forthcoming)
Jan Nielsen Little (pro hac vice application forthcoming)
Matthew M. Werdegar (pro hac vice application forthcoming)
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: jkeker@kvn.com
Email: jlittle@kvn.com
Email: mwerdegar@kvn.com

*Attorneys for Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC*