UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
CHEVRON CORPORATION,                                   :
                                                       :
                      Plaintiff,                       :
                                                       :
       -against-                                       :   Case No. 1:12-MC-65 GLS/CFH
                                                       :
STEVEN DONZIGER, et al.,                               :
                                                       :
                      Defendants.                      :
                                                       :
                                                       :
-------------------------------------------------------x

**CHEVRON CORPORATION'S OPPOSITION TO RICO DEFENDANTS' MOTION
TO QUASH SUBPOENA TO MICROSOFT CORPORATION**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND .........................................................................................3

III.  ARGUMENT ..............................................................................................5

       A.    Defendants Lack Standing to Challenge the Subpoena. ........................5

             1.    Defendants Lack Standing to Challenge the Subpoena Because
                   They Do Not Own Any of the Accounts Listed in It. ..................5

             2.    Defendants Lack Standing to Challenge the Subpoena on
                   Grounds of Burden or Relevance. ............................................6

       B.    The Subpoena Makes Reasonable Requests that Courts Routinely
             Grant. ...............................................................................................7

             1.    Courts Routinely Require Production of the Information that
                   Chevron Seeks. ......................................................................7

             2.    Defendants Misread the Subpoena to Require Production of
                   Material in Violation of the Stored Communications Act. ...........8

             3.    The Subpoenaed Information Is Relevant to Chevron's Legal
                   Claims. ................................................................................11

       C.    The Subpoena Does Not Call for the Disclosure of Privileged
             Information. ......................................................................................14

       D.    The Subpoena Does Not Infringe Defendants' Privacy Rights. ...........15

IV.   CONCLUSION.........................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AF Holdings LLC v. Doe*,
No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806 (N.D. Cal. May 31, 2012) ................ 8

*Arista Records LLC v. Does 1-27*,
584 F. Supp. 2d 240 (D. Me. 2008) ........................................................... 7

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
231 F.R.D. 426 (M.D. Fla. 2005) ............................................................ 7

*Boyle v. United States*,
556 U.S. 938 (2009) ......................................................................... 12

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ....................................................................... 17

*Brown v. Braddick*,
595 F.2d 961 (5th Cir. 1979) ................................................................ 7

*Chevron Corp. v. Donziger*,
No. 11 Civ. 0691 LAK (S.D.N.Y.) ............................................................ 1

*Chevron Corp. v. Salazar*,
No. 11 Civ. 3718 (LAK), 2011 WL 2207555 (S.D.N.Y. June 2, 2011) .............................. 4, 5

*Chevron Corp. v. Stratus Consulting, Inc.*,
No. 10-cv-00047-MSK-MEH (D. Colo. June 27, 2011) ........................................... 4

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................. 6, 7

*Conopco, Inc. v. Wein*,
No. 05 Civ. 9899 (RCC) (THK), 2007 WL 1040676 (S.D.N.Y. Apr. 3, 2007)........................ 10

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (C.D. Cal. 2010) ....................................................... 16

*Doe I v. Individuals*,
561 F. Supp. 2d 249 (D. Conn. 2008) ........................................................ 16

*Doe v. SEC*,
No. 11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ........................ 15

*Doe v. SEC*,
No. 11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ...................... 8, 17

*Goldinger v. Boron Oil Co.*,
60 F.R.D. 562 (W.D. Pa. 1973)............................................................. 10

*Griffin v. Maryland*,
19 A.3d 415 (Md. 2011)..................................................................... 12

*Hopkins v. U.S. Department of Housing and Urban Development*,
929 F.2d 81 (2d Cir. 1991)................................................................. 16

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003) ........................................................................................ 17

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) *aff'd sub nom. Lago Agrio Plaintiffs v.
   Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) .................................... 4

*In re Chevron Corp.*,
   No. 1:10-mc-00021-JCH-LFG (D.N.M. Sept. 2, 2010) .................................... 2

*In re Chevron Corp.*, No. 10 MC 00002 (LAK), Dkt. 171 (S.D.N.Y. signed Jan. 21,
   2011) ................................................................................................................ 4

*In re Jean-Baptiste*,
   No. M 11-188, 1985 WL 1863 (S.D.N.Y. July 5, 1985) ................................ 17

*In re Roebers*,
   No. 12-mc-80145-RS (LB) 2012 WL 2862122 (N.D. Cal. July 11, 2012) ............... 7

*In re United States*,
   830 F. Supp. 2d 114 (E.D. Va. 2011)............................................................ 15, 17

*Jerry T. O'Brien, Inc. v. SEC*,
   704 F.2d 1065 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984)......... 7

*John Wiley & Sons, Inc. v. Does 1-35*,
   12 Civ. 2968 (RWS) (S.D.N.Y. Dec. 28, 2012)........................................ 8

*Jones v. Hirschfield*,
   219 F.R.D. 71 (S.D.N.Y. 2003) ...................................................................... 14

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
   No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ..................... 10

*Langford v. Chrysler Motors Corp.*,
   513 F.2d 1121 (2d Cir. 1975)........................................................................ 5

*Libaire v. Kaplan*,
   760 F. Supp. 2d 288 (E.D.N.Y. 2011) .......................................................... 13

*London v. Does 1-4*,
   279 F. App'x 513 (9th Cir. 2008) .................................................................. 7

*Malmberg v. United States*,
   No. 506-CV-1042 FJS/GHL, 2010 WL 1186573 (N.D.N.Y. Mar. 24, 2010) ................ 6

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995).......................................................................................... 17

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*,
   09-CV-11165, 2010 WL 2560047 (E.D. Mich. June 15, 2010)............................. 14

*Meyer Corp. U.S. v. Alfay Designs, Inc.*,
   CV 2010 3647 CBA MDG, 2012 WL 3537001 (E.D.N.Y. Aug. 14, 2012)............... 6

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) .................................................................. 7

*Nova Prods., Inc. v. Kisma Video, Inc.*,
   220 F.R.D. 238 (S.D.N.Y. 2004) ............................................................... 6, 7

*People v. Clevenstine,*
   891 N.Y.S.2d 511 (N.Y. App. Div. 2009) ............................................................... 12

*Pure Power Boot Camp v. Warrior Fitness Boot Camp,*
   587 F. Supp. 548 (S.D.N.Y. 2008)........................................................................... 16

*Samad Bros., Inc. v. Bokara Rug Co. Inc.,*
   No. 09 Civ. 5843 (JFK) (KNF), 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) ..................... 14

*Sams v. Yahoo!, Inc.,*
   No. 10-cv-05897-JF, 2011 WL 1884633 (N.D. Cal. May 16, 2011).......................................... 9

*Schoolcraft v. City of New York,*
   No. 10 Civ. 6005 RWS, 2012 WL 2161596 (S.D.N.Y. June 14, 2012), 2012 WL
   2958176 (S.D.N.Y. July 20, 2012), *reconsideration denied*, 2012 WL 2958176
   (S.D.N.Y. July 20, 2012) ........................................................................................... 13

*Semtek Int'l, Inc. v. Merkuriy Ltd.,*
   No. 3607 DRH, 1996 WL 238538 (N.D.N.Y. May 1, 1996)............................................... 6, 7

*Snider v. Lugli,*
   CV 10-4026(JFB)(AKT), 2011 WL 5401860 (E.D.N.Y. Nov. 4, 2011) ............................... 13

*Sony Music Entm't Inc. v. Does 1-40,*
   326 F. Supp. 2d 556 (S.D.N.Y. 2004)....................................................................... 15

*Sterling Merch., Inc. v. Nestle, S.A.,*
   470 F. Supp. 2d 77 (D.P.R. 2006) ............................................................................... 7

*United States v. Konstantakakos,*
   121 F. App'x 902 (2d Cir. 2005) ............................................................................... 17

*United States v. Li,*
   No. 07-cr-2915-JM, 2008 WL 789899 (S.D. Cal. Mar. 20, 2008) ....................................... 15

*United States v. Sattar,*
   395 F. Supp. 2d 79 (S.D.N.Y. 2005)........................................................................... 17

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.,*
   No. 12 Civ. 6811 (CM) (JCF), 2012 U.S. Dist. LEXIS 158448 (S.D.N.Y. Nov. 5,
   2012) ........................................................................................................................... 5, 6

*Vogue Instrument Corp. v. Lem Instruments Corp.,*
   41 F.R.D. 346 (S.D.N.Y. 1967) ................................................................................... 7

*Xcentric Ventures, LLC v. Karsen, Ltd.,*
   No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888 (D. Ariz. Aug. 28,
   2012) ........................................................................................................................... 8

**Statutes**

18 U.S.C. § 2702(c)(6)............................................................................................... 8

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................ 1

Fed. R. Civ. P. 26(b)(1)............................................................................................... 11

Fed. R. Civ. P. 45 ........................................................................................................ 11

Fed. R. Evid. 803(6) ................................................................................................... 12

**Treatises**

Federal Civil Procedure Before Trial ("Rutter Guide") ¶ 11:2291 ................................................. 7

# I.     INTRODUCTION

Defendants' motion to quash has no merit, and like Defendants' past efforts to delay or prevent discovery, it should be rejected.

As the presiding Judge is aware, this dispute arises from a fraudulent $19 billion judgment that a group of U.S. plaintiffs' lawyers obtained against Chevron Corporation in Ecuador (the "Ecuador litigation").  In response to the fraud perpetrated against it, Chevron brought suit against those plaintiffs' lawyers under the Racketeer Influenced and Corrupt Organizations Act and New York state law (the "RICO action").  *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK (S.D.N.Y.).  The subpoena that Defendants seek to quash here—which was served on Microsoft Corporation on September 19, 2012—is part of Chevron's continuing discovery effort.  That subpoena will provide information relevant to core claims in the RICO action because the individual email account owners listed in that subpoena were intimately involved with the fraud alleged in that action.  The subpoenaed information will provide evidence about the structure and management of Defendants' fraudulent enterprise, will confirm that many of Defendants' fraudulent acts occurred in the United States (thus rebutting Defendants' jurisdictional and extraterritoriality arguments), and will help establish how major acts of fraud (such as the creation of a fraudulent expert report and the ghostwriting of the Ecuadorian court judgment itself) were perpetrated.  Because those facts are relevant to claims in the RICO action and are overcome by no privilege, Chevron is entitled to the subpoenaed information.  Fed. R. Civ. P. 26.

In moving to quash, Defendants misread the subpoena.  Contrary to Defendants' assertions, Chevron does not seek email contents, the content of Internet searches, or the ongoing production of future information.  The subpoena seeks user information and Internet Protocol ("IP") logs, which courts routinely allow email providers like Microsoft to disclose in response to subpoenas.

In fact, Defendants themselves previously subpoenaed two email providers—Google, Inc. and Yahoo! Inc.—for this same type of user and IP information.  The narrowness of Chevron's subpoena makes most of Defendants' arguments irrelevant.

In any event, Defendants lack standing to challenge the subpoena's requests for information about third parties' email accounts.  Defendants do not claim to own any of the email accounts at issue and have not established any privilege regarding the requested information. Even if they owned any of the accounts, Defendants would still lack standing to object to any burden imposed on the subpoenaed third party.  And even if Defendants possessed standing to maintain *any* of their arguments, those arguments would fail:  The subpoena requests information that is relevant to Chevron's claims, Chevron's requests are narrow and specific, and Defendants have established no privilege or privacy rights in the subpoenaed information.

At bottom, Defendants' motion is their latest effort to impede Chevron's legitimate discovery and to keep hidden details of their fraud.  At each stage in the RICO action, Defendants have claimed that Chevron is abusing the discovery process to invade their privacy, violate First Amendment rights, or intimidate Defendants and their allies.  Those arguments have been wholly meritless.  And, at every stage, once discovery is permitted, more evidence of Defendants' misconduct has come to light.  For example:

- Defendants resisted discovery into the outtakes of *Crude*, a documentary film they financed, claiming that discovery would violate privacy rights and journalistic privileges, but when they were revealed, those outtakes "sent shockwaves through the nation's legal communities, primarily because the footage shows, with unflattering frankness, inappropriate, unethical and perhaps illegal conduct."  *In re Chevron Corp.*, No. 1:10-mc-00021-JCH-LFG, slip op. at 3-4 (D.N.M. Sept. 2, 2010), Dkt. 77 (footnote omitted).

- Defendants resisted the production of their internal documents on privilege grounds, but when courts found that the privilege had been waived, the resulting documents provided "uncontradicted evidence" that a report filed by a court expert in Ecuador, which Defendants had been promoting for years as "independent" conclusive proof of

Chevron's liability, was "not entirely or even predominantly his own work," but in fact had been drafted by Defendants' own team and "tainted by fraud." RICO Dkt. 550 at 90-91.[1]

- Defendants resisted discovery into the work of their experts in the Ecuador litigation, claiming a consultant privilege, but when the documents were revealed, they showed that Defendants' own experts repeatedly concluded that the oil production activities carried out by a Texaco subsidiary in the 1970s (later acquired by Chevron) had not resulted in significant environmental harm or human health effects. RICO Dkt. 31-14; RICO Dkt. 31-17; Ex. 1.[2]

Defendants' current request to quash the subpoena here is no different. The subpoenaed material is highly relevant to Chevron's claims and is protected by no privilege. Chevron is entitled to it, and the motion to quash should be denied.

## II.   BACKGROUND

As the presiding Judge is aware, in February 2011 Chevron sued Defendants (who, along with the Ecuadorian plaintiffs, are at times referred to as the "Lago Agrio plaintiffs" or "LAPs") in the Southern District of New York, contending that they perpetrated a large scale scheme to extort billions of dollars from Chevron through a sham Ecuadorian court judgment. To support its claims, Chevron has pursued discovery to uncover evidence of Defendants' fraud.

As they do here, Defendants have fought discovery exposing their fraud because they know that public revelation of the fraud could have devastating effects. *See, e.g.*, RICO Dkt. 9-6 (email from LAPs' attorney to lead conspirator and RICO action defendant Steven Donziger telling him that if the truth about the "independent" expert were revealed, "apart from destroying the proceeding, all of us, your attorneys, might go to jail"). The LAPs have continually obstructed

---

[1]   Unless otherwise specified, citations herein to "Dkt." refer to the docket for case number 1:12-MC-65 GLS/CFH (N.D.N.Y.). Citations herein to "RICO Dkt." refer to the docket for case number 11 Civ. 691 (LAK) (S.D.N.Y.).

[2]   Unless otherwise specified, "Ex." refers to exhibits to the Declaration of Alexander Marx, filed concurrently herewith.

that effort and have repeatedly failed to comply with basic discovery orders. *See, e.g.*, Order at 2, *In re Chevron Corp.*, No. 10 MC 00002 (LAK) (S.D.N.Y.) (noting that Donziger failed to comply with orders requiring him to turn over information regarding an email account on which he had "store[d] documents of obvious possible relevance"); Order at 1, *In re Chevron Corp.*, No. 10 MC 00002 (LAK), Dkt. 151 (S.D.N.Y. signed Dec. 27, 2010) (noting special master's observations regarding Donziger's obstructionist deposition testimony and authorizing the special master "to recommend to the Court the imposition of sanctions, including civil or criminal contempt"); Order on Motions Concerning Allocations of Costs at 4, *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, Dkt. 335 (D. Colo. June 27, 2011) (noting that the court "was not given the truth" by attorneys for co-conspirator Stratus Consulting during a discovery hearing); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784, at *2 (S.D.N.Y. June 24, 2011) (describing Defendants' "thwart or delay" strategy); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010) (describing strategy "to gain tactical advantage" through delay), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

Because the LAPs have intentionally obstructed discovery, Chevron has needed to redouble its efforts to uncover information that the LAPs' have concealed. The subpoena here is part of that effort. It seeks information about the user, and usage information such as IP logs and IP address information about the accounts of various individuals who were intimately involved in Defendants' fraudulent scheme. *See* Ex. 2. Discovery of such email account information is important—and will produce material that directly supports Chevron's claims—because the LAPs used email accounts to share documents in furtherance of their fraudulent scheme. Moreover, although Defendants' efforts to secure payment from Chevron and its predecessor have been going on for decades, the subpoena seeks information generated only since the Ecuador litigation

was filed in 2003.  Ex. 2 (subpoena at 2).  In each of its meet-and-confer sessions with

subpoenaed individuals or their counsel, Chevron has offered to limit this timeframe further, to

the period that each individual worked with the LAPs.  *E.g.*, Declaration of Rebecca Gray ("Gray

Decl.") Exs. C, D, E.

Defendants now ask this Court to quash the subpoena—purportedly in its entirety—which

would keep concealed important details of their fraudulent scheme.

### III.    ARGUMENT

**A.    Defendants Lack Standing to Challenge the Subpoena.**

### 1.    Defendants Lack Standing to Challenge the Subpoena Because They Do Not Own Any of the Accounts Listed in It.

A litigant lacks standing to challenge a subpoena issued to a third party, unless the litigant

possesses a personal right or privilege regarding the documents sought.  *See Langford v. Chrysler

Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718

(LAK), 2011 WL 2207555, at *2 n.11 (S.D.N.Y. June 2, 2011) (specifically reminding these very

Defendants of this rule).

Defendants do not contend that they own any of the email accounts listed in the subpoena.

Defendants assert only that "[t]he *owners* of the email addresses in the Microsoft subpoena have

clear, recognized privacy interests in their email accounts and in the records of their email and

internet usage," without articulating any protectable interest of their own.  Motion to Quash

("Mot'n") at 11 (emphasis added).  But "[a] party's general desire to thwart disclosure of

information by a non-party is simply not an interest sufficient to create standing."  *US Bank Nat'l

Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811 (CM) (JCF), 2012 U.S. Dist. LEXIS 158448, at

*6 (S.D.N.Y. Nov. 5, 2012).  Because Defendants challenge the subpoena based only on the

alleged rights of others, they lack standing to maintain their motion to quash.  *See Malmberg v.*

*United States*, No. 5:06-CV-1042 (FJS/GHL), 2010 WL 1186573, at *1 (N.D.N.Y. Mar. 24, 2010); *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647 (CBA) (MDG), 2012 WL 3537001, at *1 (E.D.N.Y. Aug. 14, 2012); *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004).  Defendants' motion should be denied, in its entirety, on this ground alone.

> **2.    Defendants Lack Standing to Challenge the Subpoena on Grounds of Burden or Relevance.**

Defendants contend that the subpoena "poses an undue burden" and "calls for the production of vast amounts of irrelevant material."  Mot'n at 7; *see id.* at 7-9; *see also* Mot'n at 7 (making the same argument phrased in terms of "overbreadth").  Even if Defendants owned any of the accounts listed in the subpoena, these arguments would still fail because Defendants do not have standing to make them.  "A party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party."  *US Bank Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 158448 at *5; *see also Malmberg*, 2010 WL 1186573, at *2.

Defendants ignore that rule, and instead invoke *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996), and *Semtek International, Inc. v. Merkuriy Ltd.*, No. 3607 DRH, 1996 WL 238538 (N.D.N.Y. May 1, 1996), for the proposition that an overly broad subpoena should be quashed.  Yet neither case addressed standing because in *Concord* the motion to quash was brought by the third party that bore the burden of responding to the subpoena, and in *Semtek* the plaintiff sought to enforce the subpoena issued to the third party.  *See Concord Boat*, 169

F.R.D. at 46-48; *Semtek*, 1996 WL 238538 at *1.  Nothing in *Concord Boat* or *Semtek* suggests

that Defendants may complain of burden or relevance here.[3]

**B.     The Subpoena Makes Reasonable Requests that Courts Routinely Grant.**

**1.     Courts Routinely Require Production of the Information that Chevron Seeks.**

For each of the subpoenaed accounts, Chevron seeks only two categories of information:

(1) user identification information, and (2) usage information such as IP logs and IP address

information.  See Ex. 2 (subpoena at 2).  Such information is routinely sought from email service

providers in civil discovery.  *See, e.g., In re Roebers*, No. 12-mc-80145-RS (LB) 2012 WL

2862122, at *3 (N.D. Cal. July 11, 2012) ("Internet Service Providers and operators of

communications systems are generally familiar with this type of discovery request.").  And

courts consistently uphold subpoenas seeking such information.  *See, e.g., London v. Does 1-4*,

279 F. App'x 513, 514-16 (9th Cir. 2008) (affirming denial of motion to quash subpoena on

Yahoo! seeking documents disclosing IP address from which email accounts were created); *John*

*Wiley & Sons, Inc. v. Does Nos. 1-35*, No. 12 Civ. 2968 (RWS), 2012 U.S. Dist. LEXIS 182741

---

[3]   Defendants cite *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005), to support their assertion that they have standing to quash based on overbreadth.  Mot'n at 4.  In that case, the magistrate judge cited Schwarzer, et al., California Practice Guide:  Federal Civil Procedure Before Trial ("Rutter Guide") ¶ 11:2291, for the following proposition:  "A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash."  *See Moon*, 232 F.R.D. at 636.  Yet the *same* treatise elaborates: "The general rule is that a party has no standing to move to quash a subpoena served upon a third party except as to *privilege* claims relating to any documents being sought."  Rutter Guide ¶ 11:2286 (emphasis in original).  The very treatise relied upon by the *Moon* court states the correct rule, but the court apparently erred in its reading of that authority.  Simply put, *Moon* was mistaken.  The case has neither precedential nor persuasive value, and is overwhelmingly outweighed by cases reaching the opposite conclusion.  *See, e.g., Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 n.17 (D. Me. 2008); *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 81 (D.P.R. 2006); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967).

(S.D.N.Y. Dec. 28, 2012) (denying motion to quash subpoena served on defendant's internet

service provider); *AF Holdings LLC v. Doe*, No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS

75806, at *2-3 (N.D. Cal. May 31, 2012) (granting early discovery of IP log, for purpose of

determining identity of infringing IP address holder); *Xcentric Ventures, LLC v. Karsen, Ltd.*,

No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888, at *1-3 (D. Ariz. July 23, 2012)

(denying motion to quash subpoena seeking discovery of IP address information from Google).

Critically, the subpoena does not seek the contents of email communications.  *See Doe v. SEC*,

No. 11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) ("addressing

information" is less protected than the content of communications).

### 2. Defendants Misread the Subpoena to Require Production of Material in Violation of the Stored Communications Act.

Defendants contend that the subpoena calls for production of email correspondence, "the

substance of email communications," and information about internet searches.  *See, e.g.*, Mot'n at

0, 5, 9.  That is false.  The subpoena requests only account user identity and usage information.

*See* Ex. 2 (requesting account information and documents regarding "the usage of the following

email addresses, including but not limited to DOCUMENTS that provide *IP logs*, *IP address*

*information* at time of registration and subsequent usage, *computer usage logs*, *or other means of*

*recording information concerning the email or Internet usage* of the email address") (emphases

added).  This language mirrors the standard reports that email providers (including Microsoft)

have developed to respond to these types of requests.

The subpoena therefore describes information that the Stored Communications Act,

18 U.S.C. § 2701, *et seq.*, expressly authorizes email providers to disclose.  *See* 18 U.S.C.

§ 2702(c)(6) (authorizing disclosure of "information pertaining to a subscriber to or customer of

such service"); *Sams v. Yahoo!, Inc.*, No. 10-cv-05897-JF, 2011 WL 1884633, at *1, *6-7

(N.D. Cal. May 18, 2011) (rejecting claim that disclosure of IP addresses and other identifying information violated the SCA).  There is accordingly no merit to Defendants' argument that the subpoena conflicts with that Act.  Mot'n at 5-6.

Were there any doubt about the scope of the request—and there is none given the plain language of the request—Chevron has confirmed with every account holder who has inquired that it is not seeking email contents.  *See*, *e.g.*, Gray Decl. Exs. F, G & ¶¶ 5-6.  Defendants know this, of course, because Chevron made this clear after receiving Defendants' motion to quash similar subpoenas issued by the Northern District of California.  Gray Decl. Ex. H.  Indeed, Defendants seem to acknowledge knowing as much based on correspondence with Chevron.  *See* Mot'n at 3 n.3.  Defendants also know this because Yahoo! has explained it to Defendant Donziger.  In connection with earlier discovery proceedings in the RICO case, Donziger himself served similar subpoenas on email provider Yahoo!.  *See* Ex. 3.  In response, Yahoo! sent Donziger several letters detailing their legal obligations and procedures.  *E.g.*, Exs. 4-6.  Specifically, Yahoo! explained to Donziger that it would not produce "the contents of electronic communications[.]"  Ex. 4 at 1.  Yahoo! later produced to Donziger its standard report, containing the same type of user account and IP information that Chevron seeks in its subpoenas.  Ex. 7.  As Yahoo!'s letters and production to Donziger demonstrate, the information produced in response to these types of subpoenas by Google and Yahoo! is limited, and Donziger previously had no objection to the production of that information.

Defendants also misread the subpoena to require "production of each user's future email and internet usage *with no end date*."  Mot'n at 3 (emphasis added); *see* Mot'n at 7 (same).  The subpoena establishes the end date as the date of service, September 19, 2012:  "The time period covered by these document requests runs from 2003 to the present."  Defendants ignore this

limitation, and instead seize on the phrase "continuing request."  Mot'n at 7.  But the subpoena

actually says:  "This is a continuing request.  Any DOCUMENT obtained or located after the

date of production that would have been produced had it been available or had its existence been

known at that time should be produced immediately."  Ex. 2, Instruction No. 6.  That does not

require the rolling production of newly created documents; rather, it requires only that Microsoft

produce any already existing responsive documents that it might locate in the future.  It does not

alter the subpoena's clearly stated date limitation.[4]

Tellingly, in opposing related subpoenas (requesting the same type of information sought

here) in the Northern District of California, Defendants have abandoned their implausible

reading of Chevron's subpoenas and have likewise abandoned their argument under the Stored

Communications Act.  *See* Defendants' Brief in Support of Their Motion to Quash Chevron

Corporation's Subpoenas to Google Inc. and Yahoo! Inc, *Chevron Corp. v. Donziger*, No. 3:12-

mc-80237-CRB-NC (N.D. Cal. Dec. 19, 2012).  Defendants have thus all but expressly conceded

that the reading of the subpoena that they advance here is baseless.

---

[4]  Defendants assert that "Chevron has insisted that it need not produce documents in discovery
that post-date February 14, 2011."  Mot'n at 8.  That is incorrect, as Defendants' own cited
source, Chevron's discovery responses, makes clear.  *See* Dkt. 1-2 (Exhibit A to Declaration of
Garland Murphy), ¶ 9, ("except as otherwise specified in response to a Request").  Moreover,
contrary to Defendants' suggestion, Mot'n at 9, the discovery of documents that postdate some
fraudulent acts is appropriate in a case involving an *ongoing* conspiracy to commit fraud and
extortion.  *See Goldinger v. Boron Oil Co.*, 60 F.R.D. 562, 564 (W.D. Pa. 1973) ("Discovery is
permitted to acts and events transpiring subsequent to those giving rise to the cause of action
where there is a possibility that the information sought may be relevant to the subject matter of
the pending action . . . ."); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03
Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (approving request
for documents "from January 1, 1999 to the present"); *see also Conopco, Inc. v. Wein*, No. 05
Civ. 9899 (RCC) (THK), 2007 WL 1040676, at *3 (S.D.N.Y. Apr. 4, 2007) (allowing
discovery from third-party law firm for ongoing RICO conspiracy).

### 3.      The Subpoenaed Information Is Relevant to Chevron's Legal Claims.

The information that Chevron seeks, moreover, is well within the bounds of information that it is entitled to pursue in the RICO action.  The Federal Rules provide that a party is entitled to discover information "that is relevant to [its] claim[s]" and "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).[5]  Holders of the accounts listed in the subpoena were intimately involved with the fraud alleged in the RICO action.  As explained in its memorandum in opposition to a related motion to quash the subpoena to Microsoft, some listed account holders managed legal and public relations strategies that furthered the LAPs' fraud, helped the plaintiffs' attorneys use a fraudulent "independent" expert report in the Ecuadorian court, and arranged meetings with key Ecuadorian political figures that helped fix the judgment against Chevron.  *See* Mem. in Opp'n to Does' Motion to Quash at 5-6.  Other listed account holders are similarly situated.

The subpoenaed information about the listed accounts will directly and materially support Chevron's RICO action claims in several ways.

First, the subpoenaed information will show whether certain account holders had access to Defendants' internal documents and data.  Defendants and their affiliates established email accounts to store and exchange documents in furtherance of fraud.  RICO Dkt. 398 ¶ 141; RICO Dkt. 400-1 (Champion Decl., Ex. 2010 (Donziger Dep. Tr.)) at 3057:13-3058:16.  Such accounts were used to plan the ghostwritten "independent" expert report.  *Id.*  Whoever ghostwrote the $19 billion judgment, moreover, had access to Defendants' unfiled documents.  Information about who had such access—and when they may have accessed those documents—will provide details

---

[5]   *See also* Fed. R. Civ. P. 45, 1946 advisory committee's note (a subpoena has "the same scope as provided in Rule 26(b)"); 1970 advisory committee's note ("[T]he scope of discovery through a subpoena is the same as that applicable to . . .  the other discovery rules.").

about how information from those documents came to be filed as the work of the "independent" court expert and how some of that information was found verbatim in the $19 billion judgment itself.  *See* Ex. 6; RICO Dkt. 550 at 27-30.

Second, IP information will prove that substantial portions of the RICO predicate acts originated in the United States.  That is critical because—although Defendants' scheme was designed by U.S. lawyers, carried out largely in the United States, and directed at a U.S. victim— Defendants have contended that Chevron's complaint seeks an extraterritorial application of RICO.  RICO Dkt. 243 at 2-5.

Third, identifying information about the owners of the accounts—which were used to further the various RICO predicate acts of extortion, wire fraud, and money laundering—will provide evidence regarding the structure and management of the RICO enterprise.  That evidence is essential to a RICO claim.  *See Boyle v. United States*, 556 U.S. 938, 951 (2009).

Fourth, although Chevron likely knows at least some of these account holders' identities, Chevron remains entitled to regularly collected business records to substantiate those identities at trial.  *See, e.g.*, Fed. R. Evid. 803(6).  Courts have grown increasingly suspicious of internet evidence that is not properly authenticated and have required guarantees of authenticity before admitting such evidence.  *See, e.g.*, *Griffin v. Maryland*, 19 A.3d 415, 421 (Md. 2011); *People v. Clevenstine*, 891 N.Y.S.2d 511, 514 (N.Y. App. Div. 2009).  Chevron is entitled to show the jury who the relevant account users are.  The subpoenaed documents will provide Chevron with the needed evidence.

 Defendants therefore err in arguing (Mot'n at 7-10) that the subpoena seeks irrelevant material, poses an undue burden, or is overly broad.  As already explained, Defendants' have no standing to complain about relevance or burden.  *See* Part III.A.2, *supra*.  And, in any event,

Defendants' arguments—which rest wholly on the supposed overbreadth of the subpoena—are meritless.  Defendants contend that the subpoena is overbroad and seeks irrelevant material because the subpoena "call[s] for production of nine years of records . . . regardless of the purpose or subject matter of such usage" and also "demand[s] continued production for an unlimited time period [in the] future."  Mot'n at 7 (emphases omitted).  As already explained, that is wholly false.  The subpoena seeks information relevant to the account holders' association with the LAPs while the LAPs were furthering their fraudulent enterprise.  Ex. 2 (subpoena at 2).  Chevron has made clear that it is willing to narrow its requests to ensure that the subpoena yields only relevant information.  *E.g.*, Gray Decl. Ex. E.  Chevron has agreed, for example, to tailor the time ranges for its request to ensure that the information produced covers only the time periods during which the account holders associated with the LAPs.  *E.g.*, Gray Decl. ¶ 16.  Defendants, however, have provided no sworn evidence showing what periods are allegedly relevant and what periods are allegedly irrelevant.  Nor have they made a colorable argument that the subpoena would uncover any irrelevant information if account holders cooperated with Chevron.  Chevron has so cooperated with every account holder who has contacted it, and it has removed from the subpoena one account holder.  "[T]he party seeking to quash [a] subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome."  *Schoolcraft v. City of New York*, No. 10 Civ. 6005 RWS, 2012 WL 2161596, at *2 (S.D.N.Y. June 14, 2012), *reconsideration denied*, 2012 WL 2958176 (S.D.N.Y. July 20, 2012); *see also Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (same); *Snider v. Lugli*, No. CV 10-4026(JFB)(AKT), 2011 WL 5401860, at *1 (E.D.N.Y. Nov. 4, 2011) (same).  Defendants have failed to meet that burden.  *See Schoolcraft*, 2012 WL 2161596, at *2, *13.

Moreover, Defendants cannot plausibly claim that they should be the ones to provide the subpoenaed information. Mot'n at 10. The fact that Donziger was required to subpoena Google and Yahoo! to obtain the same type of user account and IP address information sought by Chevron undermines any assertion Chevron can obtain the relevant information from Defendants. *See* Mot'n at 10. By contending that Defendants themselves should be required to produce the subpoenaed information (*see* Mot'n at 10), moreover, Defendants effectively concede that the subpoena does not impose an undue burden.

**C.      The Subpoena Does Not Call for the Disclosure of Privileged Information.**

Defendants' unsubstantiated assertion that the request for IP logs implicates the attorney-client privilege and work product doctrine (Mot'n at 6-7) is without merit. Defendants cite *no* authority holding that IP logs—which are created and maintained in the normal course of business by third-party email service providers—can or should be protected as privileged communications or work product. This alone is fatal to their argument. *See Samad Bros., Inc. v. Bokara Rug Co. Inc.*, No. 09 Civ. 5843 (JFK) (KNF), 2010 WL 5094344 at *3 (S.D.N.Y. Nov. 30, 2010) (denying motion to quash where allegations of privilege were not described with "reasonable particularity" and explaining that the "mere assertion" of privilege is "not sufficient to sustain the movant's burden on [a] motion to quash"); *McNaughton-McKay, Electric Co. v. Linamar Corp.*, No. 09-CV-11165, 2010 WL 2560047, at *2 (E.D. Mich. June 15, 2010) (denying motion to quash where allegations of privilege were "neither specific nor substantiated").

Defendants assert that information about login locations potentially disclosed in the IP logs might reveal the "enforcement activities and strategies of the Ecuadorian Plaintiffs and their attorneys." Mot'n at 7. But the lone case Defendants cite to support their privilege argument stands for the uncontroversial proposition that a court may quash a subpoena where the witness has no non-privileged information to provide. *See Jones v. Hirschfield*, 219 F.R.D. 71, 72, 78

(S.D.N.Y. 2003) (granting former President Bill Clinton's motion to quash a subpoena regarding his settlement with Paula Jones).  Defendants cite no authority that the facts concerning a lawyer's whereabouts constitute a privileged communication or protected work product.  Instead, they misstate the presiding Judge's recent oral ruling in the underlying RICO action.  *See* Mot'n at 6 ("[T]he Southern District of New York has already ruled that Chevron is not entitled to such information.").  In fact, Your Honor's ruling only sustained an objection from a non-party (not a party) regarding discovery about travel to countries other than the United States and Ecuador.  *See* Ex. 8 (transcript of proceedings) at 23:20.  That transcript makes clear that the Court was not passing on the "relevance as a purely legal matter of the material sought" (*id*. at 6:18-23) or on any questions of privilege at all.  *See id*. at 4-5, 12:25-13:1 ("But you understand that I'm not passing on privilege questions today."); 17:24-18:2.  That ruling does not limit the discovery of IP log information sought here, and provides no basis for a claim of privilege.

**D.     The Subpoena Does Not Infringe Defendants' Privacy Rights.**

Defendants have no privacy interest in the data Chevron seeks because they do not own any of the accounts listed in the subpoena.  To the extent Defendants seek to invoke the account holders' privacy rights, *see* Mot'n at 10-11, they lack standing to do so.  *See* Part III.B.1., *supra*.

In any event, even the account holders have at most only a "minimal expectation of privacy" in the subpoenaed material.  *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (Chin, J.).  Indeed, courts "routinely reject the argument that subscribers have a privacy interest in their account information."  *Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) (denying motion to quash administrative subpoena that "d[id] not seek the content of any of Movant's communications but rather [sought] 'addressing information' that will allow the SEC to identify Movant"); *see also In re United States*, 830 F. Supp. 2d 114, 131-33 (E.D. Va. 2011) (holding that petitioners, through their

15

voluntary transmission of their IP addresses to Twitter, had no expectation of locational privacy in IP logs); *cf. United States v. Li*, No. 07cr2915JM, 2008 WL 789899, at \*5 (S.D. Cal. Mar. 20, 2008) ("[T]he [Stored Communications Act] . . . clearly does not communicate to subscribers or customers that they have a reasonable expectation of privacy in their IP addresses and log-in histories.").

   None of the cases Defendants cites holds to the contrary.  They cite *Hopkins v. U.S. Department of Housing & Urban Development*, 929 F.2d 81 (2d Cir. 1991), for the proposition that there is a privacy interest in "name, address and financial information."  Mot'n at 10-11.  But *Hopkins* involved a request made under the Freedom of Information Act ("FOIA") and therefore says nothing about whether identification and IP information is privileged in civil discovery.  *See* 929 F.2d at 83.  *Pure Power Boot Camp*, which Defendants cite regarding expectations of privacy in a user's email account, addresses unauthorized access by using—and in one instance, "guessing"—the account user's password.  *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 548, 562 (S.D.N.Y. 2008).  *Pure Power Boot Camp* is thus irrelevant to the question of what may be disclosed to a litigant through civil discovery.  Moreover, *Pure Power Boot Camp* involved access to email contents, while Chevron merely seeks identifying information and IP logs.  Defendants' reliance on *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), is likewise unavailing.  For purposes of standing, *Crispin* recognized a "personal right in information in [one's] profile and inbox on a social networking site," *id.* at 974, but the court did not hold that user information or IP logs were private or protected, *see id.* at 991.

   The matter now before this Court makes clear why courts routinely reject privacy arguments like those made by Defendants.  Many of the listed account holders used their own

names or initials in the email addresses associated with their accounts.  And they did so using an

email service (Microsoft Hotmail) that warns users that their identifying information will not be

kept private if it is subpoenaed.  *See* Ex. 9.  That warning—particularly when coupled with the

account holders' efforts not to keep private their account identifying information—renders their

privacy interest "minimal," *Doe I v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008) (so

describing the expectation of privacy resulting from a similar internet service provider warning),

and readily overcome by the need for disclosure.  *See also Doe v. SEC*, No. 11-mc-80184 CRB

(NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) (noting that courts "routinely reject the

argument that subscribers have a privacy interest in their account information" and rejecting

motion to quash subpoena that "d[id] not seek the content of any of Movant's communications

but rather 'addressing information' that will allow the SEC to identify Movant"); *In re United

States*, 830 F. Supp. 2d 114, 131-33 (E.D. Va. 2011) (holding that petitioners had no expectation

of locational privacy in IP logs when they voluntarily transmitted their IP addresses to Twitter).[6]

---

[6]  In a footnote, Defendants argue that the subpoenas "may" violate users' First Amendment
rights "by seeking specific identifying information of the users."  Mot'n at 11 n.8.  But the vast
majority of the email addresses covered by the subpoenas are simple variations on the names of
the account holders (e.g., donaldmoncayo@hotmail.com for Donald Moncayo,
simeontegel@hotmail.com for Simeon Tegel, or aulestiajuan@hotmail.com for Juan Aulestia).
This hardly suggests a protected "decision to remain anonymous."  *McIntyre v. Ohio Elections
Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous . . . is an
aspect of the freedom of speech protected by the First Amendment.").  To the extent that
participants in Defendants' enterprise have ever evinced a desire to conceal their identities,
moreover, it has been to facilitate fraudulent conduct.  *See* RICO Dkt. 398 ¶ 141.  The First
Amendment does not protect fraudulent activity or associations that further a conspiracy.  *See,
e.g.*, *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003);
*McIntyre*, 514 U.S. at 357; *Branzburg v. Hayes*, 408 U.S. 665, 697 (1972); *United States v.
Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005); *United States v. Sattar*, 395 F. Supp.
2d 79, 101 (S.D.N.Y. 2005); *In re Jean-Baptiste*, No. M 11-188(DKL), 1985 WL 1863, at *1
(S.D.N.Y. July 5, 1985).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to quash should be denied.

Dated:  January 15, 2013

Respectfully submitted,

By:    s/ Randy M. Mastro
_____

Randy M. Mastro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0913
Telephone:  212.351.4000
Facsimile:  212.351.4035
rmastro@gibsondunn.com

Howard S. Hogan
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  202.955.8500
Facsimile:  202.530.9550
hhogan@gibsondunn.com

Paul DerOhannesian II
DEROHANNESIAN &
DEROHANNESIAN
677 Broadway Suite 202
Albany, New York 12207
Telephone:  518.465.6420
Facsimile:  518.427.0614
paul@derolaw.com

*Attorneys for Chevron Corporation*

18