**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHEVRON CORP.,

           Plaintiff,

    -against-

                                   Case No. 1:12-mc-65 LAK

                                   Hon. Lewis A. Kaplan

STEVEN DONZIGER, *et al.*,

                   Defendants.

**REPLY IN SIPPORT OF MOTION OF NON-PARTY JOHN DOE MOVANTS TO QUASH SUBPOENA TO MICROSOFT, INC. SEEKING IDENTITY AND EMAIL USAGE INFORMATION**

## TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................................... 1

II.   ARGUMENT.......................................................................................................... 1

    A.   THE DOES HAVE STANDING TO CHALLENGE CHEVRON'S SUBPOENA TO
    MICROSOFT IN ITS ENTIRETY. ................................................................... 1

    B.   CHEVRON'S SUBPOENA TO MICROSOFT VIOLATES THE DOES' FIRST
    AMENDMENT RIGHT TO ANONYMOUS SPEECH. .......................................... 4

    C.   CHEVRON'S SUBPOENA TO MICROSOFT VIOLATES THE DOES' FIRST
    AMENDMENT RIGHT TO ASSOCIATION. ....................................................... 9

III.   CONCLUSION ..................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Arista Records L.L.C. v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)................................................................. 5, 6

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)................................................................. 3

*Bates v. City of Little Rock*,
   361 U.S. 516 (1960)................................................................. 9

*Broome v. Simon*,
   255 F. Supp. 434 (W.D. La. 1965)................................................................. 4

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012)................................................................. 1

*Chevron Corp. v. Salazar*,
   No. 11–0691–LAK, 2011 U.S. Dist. LEXIS 153066 (D. Or. Nov. 30, 2011)............. 7, 10

*Craig v. Boren*,
   429 U.S. 190 (1976)................................................................. 2

*Doe v. 2TheMart.com Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001)................................................................. 5, 6, 8

*Dole v. Serv. Emps. Union, AFL-CIO, Local 280*,
   950 F.2d 1456 (9th Cir. 1991)................................................................. 9

*Enterline v. Pocono Med. Ctr.*,
   751 F. Supp. 2d 782 (M.D. Pa. 2008)................................................................. 2

*Gilmore v. City of Montgomery*,
   417 U.S. 556 (1974)................................................................. 9

*Gregg v. Clerk of U.S. Dist. Court*,
   160 F.R.D. 653 (N.D. Fla. 1995)................................................................. 4

*Illinois ex rel. Madigan v. Telemarketing Assocs.*,
   538 U.S. 600 (2003)................................................................. 9

*In re Chevron Corp.*,
   650 F.3d 276 (3d Cir. 2011)................................................................. 1

*In re Grand Jury Proceedings,*
    776 F.2d 1099 (2d Cir. 1985)........................................................................... 10

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31,*
    No. MISC 08–347-ARR-MDG, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010)................. 4

*Lerman v. Bd. of Elections,*
    232 F.3d 135 (2d Cir. 2000)........................................................................... 2

*Local 1814, Int'l Longshoremen's Assoc. AFL-CIO v. Waterfront Comm'n. of New York Harbor,*
    667 F.2d 267 (2d Cir. 1981)........................................................................... 9

*McVicker v. King,*
    266 F.R.D. 92 (W.D. Pa. 2010) ....................................................................... 2

*N.Y. State Nat'l Organization for Women v. Terry,*
    886 F.2d 1339 (2d Cir. 1989)..................................................................... 9, 10

*NAACP v. Button,*
    371 U.S. 415 (1963)...................................................................................... 9

*NAACP v. State of Alabama ex rel. Patterson,*
    357 U.S. 449 (1958)...................................................................................... 9

*Sec'y of Maryland v. Joseph H. Munson Co.,*
    467 U.S. 947 (1984)...................................................................................... 2

*Thomas v. Collins,*
    323 U.S. 516 (1945)...................................................................................... 9

*United States v. Blechman,*
    657 F.3d 1052 (10th Cir. 2011) ...................................................................... 5

*United States v. Bortnovsky,*
    879 F.2d 30 (2d Cir. 1989)............................................................................ 5

*United States v. Citizens State Bank,*
    612 F.2d 1092 (8th Cir. 1980) ........................................................................ 9

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton,*
    536 U.S. 150 (2002).................................................................................... 5

*Windsor v. Martindale,*
    175 F.R.D. 665 (D. Colo. 1997) ...................................................................... 4

**STATE CASES**

*Ind. Newspapers Inc. v. Junior Achievement of Cent. Ind., Inc.*,
    963 N.E.2d 534 (Ind. Ct. App. 2012).................................................................. 2

**FEDERAL RULES**

Federal Rule of Civil Procedure 26(c) .................................................................. 4

Federal Rule of Evidence 801(d)(2) .................................................................. 5

Federal Rule of Evidence 803(6) .................................................................. 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend I .................................................................. *passim*

## I.      INTRODUCTION

Chevron's subpoena to Microsoft—along with those to Google and Yahoo!, which are the subject of a separate motion to quash pending in California—is only the latest salvo in a campaign of discovery so extraordinarily extensive as to be called "unique in the annals of American judicial history" by two circuit courts. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 236 (2d Cir. 2012); *In re Chevron Corp.*, 650 F.3d 276, 282 n. 7 (3d Cir. 2011). Chevron asserts that its requests are "routine" and do not violate anyone's rights, but there is nothing routine about these subpoenas. Chevron has asked this Court and the District Court for the Northern District of California to authorize it to identify and map the whereabouts of 101 internet users— all but a handful of whom are non-parties to its lawsuit—over the course of nine years. This will reveal the users' associations, and could expose intimate details such as where each person slept, worshipped, worked, and vacationed for nearly a decade. Chevron cites no case authorizing civil discovery regarding non-parties that approaches in scope or scale the subpoenas at issue here because there is no such case.

Chevron does not deny that it seeks this information. Instead the company argues that this blunderbuss is justified merely because the non-parties had some connection with environmental advocacy efforts in Ecuador and therefore with the defendants. But this assertion fails to meet the distinct and exacting legal standards that protect the identities and associations of the John Doe Non-Party Movants ("Does"). Far from satisfying those tests, Chevron's subpoenas appear to be a blatant attempt to intimidate and harass the Does to discourage them from participating in the policy debate surrounding the environmental consequences of oil extraction—core political expression protected by the First Amendment. The Court should reject Chevron's attempt to abuse the discovery process to silence these non-parties.

## II.     ARGUMENT

### A.      The Does Have Standing to Challenge Chevron's Subpoena to Microsoft in Its Entirety.

Chevron concedes, as it must, that the Non-Party Jovants have standing to challenge the subpoena to Microsoft with respect to their own accounts. But Chevron claims the Does lack

standing to challenge the subpoena as a whole, and cannot assert the rights of others whose email accounts have been listed in the subpoena. Chevron is wrong.

The Supreme Court has long recognized that a third party has standing to assert another's First Amendment rights "[w]here practical obstacles prevent a party from asserting rights on behalf of itself." *Sec'y of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). *See also Lerman v. Bd. of Elections*, 232 F.3d 135, 143-44 (2d Cir. 2000). Such standing is appropriate when the third party has suffered injury in fact, and when the third party "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Id*. (citing *Craig v. Boren*, 429 U.S. 190, 193-94 (1976)).

Courts have applied this doctrine to recognize the standing of third parties to move to quash subpoenas seeking the identities of anonymous online speakers who have not directly asserted their own First Amendment rights. *See*, *e.g*., *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D. Pa. 2008) (finding media company had standing to assert First Amendment rights of anonymous commenters on its website); *Ind. Newspapers Inc. v. Junior Achievement of Cent. Ind., Inc.*, 963 N.E.2d 534, 549 (Ind. Ct. App. 2012) (same); *McVicker v. King*, 266 F.R.D. 92, 95-6 (W.D. Pa. 2010) (same). This Court should follow suit to protect the First Amendment freedoms of dozens of individuals who likewise may not be able to assert their own interests.

First, the holders of the email accounts who have not appeared before the Court face practical obstacles to asserting their rights. Chevron has consistently misstated that account holders who have not reached out to negotiate with Chevron directly or moved to challenge the subpoena in court have "chosen not to object to Chevron's requests." Chevron Corporation's Memorandum of Law Opposition to Motion of Joe Doe Movants to Quash Subpoena to Microsoft, Inc. Seeking Identity and Email Usage Information. ("Chevron Opp.") (ECF No. 35) at 8. But there is no indication that each affected account owner has received actual notice of Chevron's subpoena. While Microsoft's efforts to notify its customers about the subpoena is essential, they are a far cry from effective legal service of process.

Some of the account owners may have overlooked the messages sent by Microsoft, or

may have been slow to read them.[1] Some of the email addresses may no longer be functional, raising serious doubts that their former owners ever learned of Chevron's subpoena. Supp. Harrison Decl. ¶ 6 (noting that five hotmail.com addresses appear to no longer be functional). Some of the email account holders live and work abroad, which may make it difficult for them to obtain counsel to challenge these subpoenas in federal court in New York. Some may not read English and therefore not have understood the notice. Others may not have read the notice if it was mismarked as spam. Still others may have simply missed the email informing them that Chevron seeks their information. For all these reasons, a number of the email account holders face practical obstacles to asserting their own interests in this action.

Second, the Does have demonstrated sufficient injury in fact. In a First Amendment challenge, a party may establish injury in fact by "demonstrat[ing] a realistic danger of sustaining a direct injury" as a result of the challenged action. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The Does have more than satisfied this burden. Mem. of Law in Support of Mot. of Non-Party John Doe Movants to Quash Subpoena to Microsoft, Inc. ("Does' Mot. to Quash") at 17 (ECF No. 2); Declaration of John Doe ("John Doe Decl.") (ECF No. 2-4); Declaration of John Doe 2 (Owner of pirancha@hotmail.com), ("John Doe 2 Decl.") (filed herewith).

As the declarations of John Doe and John Doe 2 make clear, they feel harassed by Chevron's attempt to obtain information about their past involvement in advocacy efforts against the company's oil extraction activities. John Doe Decl. ¶ 14; John Doe 2 Decl. ¶ 9. John Doe 2 has already faced physical threats as a result of participating in environmental advocacy efforts against Chevron. John Doe 2 Decl. ¶ 8. Moreover, John Doe 2 knows others who have stopped participating in or declined to participate in activism against Chevron because they fear harassment and retribution. John Doe 2 Decl. ¶ 11. John Doe fears further harassment if Chevron actually gains access to the information it seeks, and believes this result will chill his political

---

[1] Indeed, the owner of the email account duruti@hotmail.com joined the Does' motion to quash just this week. Supp. Harrison Dec. ¶ 3.

expression in the future. John Doe Decl. ¶¶ 11-14. The Does have made a *prima facie* showing that Microsoft's compliance with Chevron's subpoena will chill their constitutionally protected associational rights. The burden to justify the subpoena is therefore Chevron's.

Third, the Does can frame the issues properly and present them with adversarial zeal. The Does and the owners of the other email accounts listed in the subpoena are similarly situated. Chevron seeks the same information about each of these individuals, and each account owner has First Amendment interests in the entirety of the information sought by Chevron. The Does have presented the legal issues in a manner that applies to all the affected individuals, and have retained counsel to litigate these questions vigorously.

For these reasons, the Court should find the Does have standing to challenge the subpoena as it applies to each individual named in them. But even if the Court finds the Does do not have third-party standing to assert the First Amendment rights of the other email account holders, it should exercise its discretion under Federal Rule of Civil Procedure 26(c) to quash the subpoena in its entirety because it is grossly overbroad as drafted, and is oppressive and unreasonable. *See* Does' Mot. to Quash at 19-20; *see also Windsor v. Martindale*, 175 F.R.D. 665, 670 (D. Colo. 1997) (a court may quash a subpoena *sua sponte* as an exercise of its "inherent power to protect anyone from oppressive use of process") (citing *Gregg v. Clerk of U.S. Dist. Court*, 160 F.R.D. 653, 654 (N.D. Fla. 1995)); *Broome v. Simon*, 255 F. Supp. 434, 437 (W.D. La. 1965) (same).

### B. Chevron's Subpoena to Microsoft Violates the Does' First Amendment Right to Anonymous Speech.

Throughout its opposition, Chevron attempts to conflate its requests for identifying information for non-parties with requests directed at parties' identities. Subpoenas that seek the identity of *non-parties* must be treated with heightened scrutiny. *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC 08-347-ARR-MDG, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010), report and recommendation adopted in pertinent part, No. 08-MC-347-ARR-MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010), (citing with approval *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash.

2001)). Applying any test for the discovery of parties' identities to the non-parties here would be inappropriate.

Chevron argues that because some (but not all) of the Does use what appear to be portions of their names in their email addresses, each and every Doe has ceased to be anonymous.[2] Chevron Opp. at 14. Chevron cannot have it both ways. Either Chevron already knows who the non-parties are, or it doesn't. If Chevron knows their identities, it does not need this cumulative discovery.[3] If Chevron does not know their identities, then it must satisfy the *2TheMart.com* test. In any event, the law is clear that one need not maintain perfect anonymity to enjoy the protection of the First Amendment. *See, e.g., Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton,* 536 U.S. 150, 166-69 (2002).

Chevron proposes that this Court apply the test for unmasking anonymous *defendants* enunciated in *Arista Records L.L.C. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), to the non-parties

---

[2]  The addresses duruti@hotmail.com and pirancha@hotmail.com are examples of email addresses that do not contain names.

[3]  In its opposition, Chevron argues that it needs the "specific information" it seeks because obtaining it from Microsoft will "make it admissible." Chevron Opp. at 18-19. Here again, Chevron improperly conflates the non-party Does with the defendants. The information Chevron seeks—specifically the *non-party* subscriber information collected by Microsoft at the time of account registration—is hearsay within hearsay. The record of subscriber information maintained by Microsoft is in all likelihood a business record and therefore could fall within an exception to the hearsay rule. *See* Fed. R. Evid. 803(6). However, the out-of-court statement sought by Chevron is not Microsoft's statement that it collected the subscriber information, *and not a statement by a party,* but rather content of the statement by the individual who signed up for the account. For an account owned by a *defendant*, that statement by the account holder to Microsoft at the time of account registration would not be hearsay. *See* Fed. R. Evid. 801(d)(2). For those accounts owned by the Non-Party Doe Movants, however**,** *any* statements by those non-parties, even if contained within Microsoft's admissible business records, are hearsay for which no exception exists. *See United States v. Bortnovsky,* 879 F.2d 30, 34 (2d Cir. 1989) (statement of a third-party contained within otherwise admissible insurance report properly excluded where third-party was under no business duty to report); *United States v. Blechman*, 657 F.3d 1052, 1065-66 (10th Cir. 2011) (information concerning identity of third-party over Internet was not admissible under business records exception to hearsay rule). Thus, even if Microsoft's own record showing that an individual registered for an account using a particular name is admissible as a business record, truth of the content of that person's statement of his or her identity—the precise information Chevron seeks from Microsoft here—is still inadmissible hearsay, and Chevron's justification for this discovery fails.

here. Yet in that case, as in the other cases cited by Chevron, the plaintiff's suit could not proceed to substantive discovery without first identifying defendant. The case against the unnamed defendant was for copyright infringement, so at the outset, the court tested the plaintiff's allegation to determine if it had made a *prima facie* case. *Id*. at 118-19.

In contrast, by definition, Chevron has not made legal claims against any of the non-party Does. It may be that Chevron has made a *prima facie* case against the defendants named in the complaint, but applying this analysis to the Does makes little sense, since Chevron has no *prima facie* case to make against them. Thus, the *Arista Records* test is not the correct one.

Chevron attempts to overcome this fatal defect in its analysis by repeatedly arguing that the defendants' alleged actions should be imputed to the Does. Chevron Opp. at 13-20. While Chevron is correct that the First Amendment does not protect the concealment of illegal activity, Chevron Opp. at 14-15, Chevron has not alleged any civil causes of action against the Does, much less criminal activity. Chevron presumably determined who had potential liability when it chose the defendants to name in its 200+ page complaint, and as this Court is aware, it chose to name many people. But Chevron did not include the Does as defendants. That choice has consequences and Chevron cannot now seek to have this Court treat these non-parties as parties for purposes of discovery. Accordingly, the *2TheMart.com* test is the applicable test.

As described in Does' Motion to Quash, the *2TheMart.com* test requires that "(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source." *2theMart.com*, 140 F. Supp. 2d at 1095. In its opposition, Chevron has failed to make the required showing under any of the four parts.

First, Chevron has failed to show that the subpoena was issued in good faith. To the contrary, Chevron appears to have issued this subpoena to harass and discourage non-parties' from ongoing participation in the political and legal debate surrounding oil extraction activities in Ecuador. To that end, Chevron's Opposition demonstrates blatant disregard for the Does'

6

constitutional concerns, purporting to list on the public record the names of the non-party Doe movants, including the Doe who submitted the declaration demonstrating the subpoena is likely to result in harassment, membership withdrawal, and a chilling of the Does' political expression. Chevron Opp. at 5-7.[4]

Chevron's lack of good faith is also apparent in its justification for seeking nine years of information about each of the 30 email accounts listed in the subpoena to Microsoft. Instead of explaining why nine years of IP logs is relevant for each account—including those it believes to be owned by individuals whose involvement was limited to a short time period—Chevron attempts to shift the burden to the Does, asserting that they "have not submitted any sworn evidence affirming that there is a period of time when they were *not* working with" the Lago Agrio plaintiffs. Chevron Opp. at 18 (emphasis in original). This maneuver seems aimed at requiring the Does to take steps to undermine their own anonymity as a condition of protecting it. But the burden to show good faith is Chevron's alone.

Second, Chevron has failed to show how the identity and IP logs of each and every one of the 30 non-party account owners affected by this subpoena will go to show the actions of the defendants, where the defendants were located when they allegedly committed those actions, or how they did so. Here again, Chevron confuses parties and non-parties. Chevron asserts that because it has "well-supported RICO claims" against the defendants, the subpoenas should stand even as to the non-parties. *See* Chevron Opp. at 20. Chevron has identified three rationales for issuing these discovery demands: that they will "[1] provide evidence about the structure and management of the *RICO defendants'* fraudulent enterprise, [2] will confirm that many of the *defendants'* fraudulent acts occurred in the United States . . . [and 3] establish how major acts of fraud . . . were perpetrated." Chevron Opp. at 3 (emphasis added). Chevron has declined to make the required address-by-address showing that it has a good faith belief that the identity of each

---

[4] This is not the first time that Chevron has abused the subpoena power in third-party discovery surrounding this case. *See Chevron Corp. v. Salazar*, No. 11-0691-LAK, 2011 U.S. Dist. LEXIS 153066, at *9 (D. Or. Nov. 30, 2011) (noting that Chevron's Rule 45 subpoena "was, at least in part, meant to harass").

non-party account owner, along with the full nine years' worth of IP logs it seeks for each account, will contribute to any of the three goals it identified. *See* Chevron Opp. at 17-18. Perhaps Chevron has made such a showing as to those accounts owned by the defendants, but that does not save these subpoenas. The massive overbreadth of the subpoena and Chevron's failure to narrow it after lengthy negotiations demonstrates that Chevron has not satisfied its burden to demonstrate that the information it seeks is "directly and materially relevant to [a] claim or defense." *See 2theMart.com*, 140 F. Supp. 2d at 1095.

Finally, Chevron seems to assert that the information it seeks is unavailable from any other source because the defendants fought discovery early on in the litigation. *See* Chevron Opp. at 4, 18. But Chevron glosses over the fact that it eventually won most of those battles and has obtained an extraordinary amount of discovery. Among other items in Chevron's possession are all of Steven Donziger's emails, his computer hard drive, work product from his interns and co-counsel, and his personal journals. While Chevron of course cannot obtain Microsoft's IP logs from other sources, it can certainly obtain evidence of the defendants' identities and locations elsewhere, which is what it represents is ultimately relevant to its claims. Indeed, it freely admits that it already has. Chevron Opp. at 14.

## C.   Chevron's Subpoena to Microsoft Violates the Does' First Amendment Right to Association.

Chevron's efforts to pierce the Does' right to association also fail. The Does have made a *prima facie* showing of arguable First Amendment infringement, and Chevron has failed to show that its interest in the information it seeks is significant enough to defeat the account owners' First Amendment rights.

First, Chevron misconstrues the associational interest at issue here. Chevron repeatedly describes the relevant association as the "involvement" between the non-party email account owners and the plaintiffs in the Lago Agrio litigation. Chevron Opp. at 14, 22. In fact, the Does have asserted their right to associate with others engaged in environmental litigation against the oil company and more broadly to environmental activism, all of which is highly protected political speech reaching beyond the Lago Agrio litigation or any alleged RICO enterprise. *See,*

*e.g.*, *NAACP v. Button*, 371 U.S. 415, 429-31 (1963); *Thomas v. Collins*, 323 U.S. 516, 537 (1945). Chevron may not agree with the Does' viewpoints, but "[t]he freedom to associate applies to the beliefs we share, and to those we consider reprehensible." *Gilmore v. City of Montgomery*, 417 U.S. 556, 575 (1974). Chevron has never claimed that the Does violated the law, and merely alleging that the defendants carried out a fraud does not nullify the Does' First Amendment rights. *See Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003) ("Simply labeling an action one for 'fraud,' of course, will not carry the day.").

Second, Chevron focuses myopically on the identities of the Does, arguing that the disclosure of their names cannot harm their associational freedoms because "the genie has left the bottle." Chevron Opp. at 21. But this argument sidesteps the proper inquiry. As the Second Circuit has held, the existence of a *prima facie* case of harm turns on whether the movants have "at least articulate[d] some resulting encroachment on their liberties." *N.Y. State Nat'l Organization for Women v. Terry,* 886 F.2d 1339, 1355 (2d Cir. 1989) (citing *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960); *see also Local 1814, Int'l Longshoremen's Assoc. AFL-CIO v. Waterfront Comm'n. of New York Harbor,* 667 F.2d 267, 271 (2d Cir. 1981). Moreover, the movant's burden to meet this standard is "light." *Terry,* 886 F.2d at 1355.

While Chevron complains the Does have not made an adequate threshold showing of arguable First Amendment infringement, the movants have presented two declarations showing that they feel harassed, and that compelled disclosure of their identities and email usage information will negatively impact future expressive activities—which is just the type of evidence that satisfies a movant's threshold burden. *Perry v. Schwarzenegger*, 591 F.3d 1126, 1143 (9th Cir. 2009); *Dole v. Serv. Emps. Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991); *United States v. Citizens State Bank*, 612 F.2d 1092, 1094 (8th Cir. 1980). These declarations demonstrate that the disclosure Chevron seeks "would have the practical effect of discouraging the exercise of constitutionally protected political rights." *Int'l Longshoremen's Assoc.,* 667 F.2d at 271 (citing *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958)). And given that at least one court has already found that Chevron issued other non-party discovery in order to harass, and awarded substantial attorneys fees as a result, the Does'

concerns cannot be waved off as mere speculation. *See Salazar*, 2011 U.S. Dist. LEXIS 153066.

Shifting to the First Amendment standard, Chevron contends that it has a "compelling interest" in the information it seeks. *Terry,* 886 F.2d at 1355; *In re Grand Jury Proceedings*, 776 F.2d 1099, 1103 (2d Cir. 1985). This claim does not pass muster.

Chevron seeks nine years of information about each of the 30 email accounts listed in the subpoena. The company complains that the subpoena "only" requests information "for the time period since the Ecuador litigation began in 2003," Chevron Opp. at 12, but offers little explanation about why this massive amount of information is necessary to litigate its case. Chevron makes no effort to show how each account holder's information is relevant to Chevron's RICO claims. The only specific details Chevron offers to link the non-parties to the alleged fraud is vaguely to insinuate they could have been somehow involved in the writing of an expert's report or the judgment in the Ecuador litigation. Chevron Opp. at 18. The final report was submitted to the court on April 1, 2008, and the judgment was issued on February 14, 2011. Assuming *arguendo* that Chevron's bald allegations were sufficient to trump the Does' First Amendment rights—which they are not—this explanation could only justify the disclosure of information a period of time ending in February 2011.

Chevron implicitly concedes that its subpoenas are overbroad, noting that it offered to tailor the timeframe for account holders who would identify themselves and volunteer the time range during which they "associated" with the Lago Agrio plaintiffs. Chevron Opp. at 12-13. But it is not the Does' burden to prove their information is irrelevant to Chevron's case, but rather Chevron's burden to show that it has a "compelling interest" in the information it seeks. Chevron has not made this showing for *any* of the non-party email accounts listed in the subpoena to Microsoft.

## III.   CONCLUSION

For the foregoing reasons, the September 19, 2012 subpoena served by Chevron upon Microsoft should be quashed in its entirety.

DATED: February 1, 2013                          Respectfully submitted,

                                                 _____/s/ Mitchell L. Stoltz_____
                                                 Mitchell L. Stoltz, Esq.
                                                 (Bar Roll No. 517844)
                                                 Marcia Hofmann, Esq.
                                                 (admitted *pro hac vice*)
                                                 Nathan Cardozo, Esq.
                                                 ELECTRONIC FRONTIER FOUNDATION
                                                 454 Shotwell Street
                                                 San Francisco, CA 94110
                                                 Telephone: (415) 436-9333
                                                 Facsimile: (415) 436-9993

                                                 Marco Simons, Esq.
                                                 marco@earthrights.org
                                                 EARTHRIGHTS INTERNATIONAL
                                                 1612 K Street NW, Suite 401
                                                 Washington, DC 20006
                                                 Telephone: (202) 466-5188

                                                 *Counsel for Non-Party John Doe Movants*

11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHEVRON CORP.,

               Plaintiff,

     -against-

                                   Case No. 1:12-mc-65 lk/CFH

                                   Hon. Lewis A. Kaplan

STEVEN DONZIGER, *et al.*,

               Defendants.

## CERTIFICATE OF SERVICE

       I hereby certify that on February 1, 2013, I electronically filed the foregoing with the

Clerk of the District Court using the CM/ECF system, which sent notification of such filing to

the following:

Randy M. Mastro
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Tel: 212-351-4000
Fax: 212-351-5219
Email: rmastro@gibsondunn.com

Howard S. Hogan
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel: (202) 955-8500
Fax: (202) 467-0539
Email: hhogan@gibsondunn.com

Paul DerOhannesian, II
DEROHANNESIAN &
DEROHANNESIAN
677 Broadway, Suite 202
Albany, NY 12207
Tel: 518-465-6420
Fax: 518-427-0614
Email: derolaw@verizon.net

*Attorneys for Plaintiff Chevron Corporation*

Craig Smyser
Larry R. Veselka
SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, TX 77002
Tel: 713-221-2300
Fax: 713-221-2320
Email: csmyser@skv.com
Email: lveselka@skv.com

John W. Keker
Jan Nielsen Little
Matthew M. Werdegar
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, CA 94111
(415)-391-5400
Fax: (415)-397-7188
Email: jkeker@kvn.com
Email: jlittle@kvn.com
Email: mwerdegar@kvn.com

Justin W. Gray
MAYNARD, O'CONNOR, SMITH &
CATALINOTTO, LLP
6 Tower Place
Albany, NY 12203
Tel: 518-465-3553
Fax: 518-465-5845
Email: gray@maynardoconnorlaw.com

*Attorneys for Defendants Steven Donziger,
The Law Offices of Steven R. Donziger,
Donziger & Associates, PLLC, Javier
Piaguaje Payaguaje, and Hugo Gerardo
Camacho Naranjo*

And, I hereby certify that I have mailed by the United States Postal Service the document

to the following non-CM/ECF Participants:

Microsoft Corporation
c/o Corporation Service Company
80 State Street
Albany, NY  12207
Brien Jacobsen <brienj@microsoft.com>

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

February 1, 2013.

Stephanie Shattuck
Legal Secretary

On behalf of:
Mitchell L. Stoltz, Esq.
Marcia Hofmann, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

*Counsel For Non-Party Movants*

2