UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                             Plaintiff,


                  -against-                                    1:12-MC-00065-LAK-CFH


STEVEN DONZIGER, et al.,

                             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### ORDER


LEWIS A. KAPLAN, *District Judge.*

             The "John Doe" who claims to be the owner of the email account
simeontegel@hotmail.com ("Tegel") moves for reconsideration of this Court's order of June 25,
2013, which denied a motion to quash a subpoena served upon Microsoft.

             The Court adopts for purposes of this motion movant's statement of the standard
governing motions for reconsideration in this District, viz:

                  "Reconsideration is warranted where the moving party can show the court
                  'overlooked' facts or controlling law that 'might reasonably be expected to alter the
                  conclusion reached by the court.' [citation omitted]  In the Northern District of New
                  York, a court may granted a motion for reconsideration where, among other things,
                  new evidence not previously available comes to light, or in order to 'correct a clear
                  error of law or prevent manifest injustice.' [citation omitted]"

The Court takes movant's several points in order.

             1.      "Tegel" first argues that the Court incorrectly assumed that none of the
movants was a United States citizen, which was relevant to the question whether any of them was
entitled to the First Amendment protection they claimed.  He points out that he in fact is a U.S.
citizen although no evidence is submitted as to any of the other movants.

                  The Court did not overlook or assume anything.  "Tegel," as well as the two
other John Doe movants, claimed the protection of the First Amendment both on their own behalf
and on behalf of the non-party recipients of the subpoena who never appeared in this Court or

2

moved to quash it. In order to establish that they were protected by the First Amendment, it was their burden to demonstrate that those on behalf of whom the argument was made were entitled to its protection. They failed entirely to do so. Indeed, even today, the two John Does other than "Tegel" have not claimed that they are U.S. citizens or, for that matter, that their alleged expressive and associational activities occurred or will occur in the United States.

2.     The fact that "Tegel" is a U.S. citizen is not "new evidence not previously available." In the interest of justice, however, the Court will reconsider the motion as to him alone in light of that fact.

3.     The claim that the Court's allegedly erroneous assumption that none of the movants was a U.S. citizen "heavily informed" its decision as to third party standing to challenge the subpoena simply is wrong. The result on that point would have been the same even if all of the movants were citizens.

4.     The assertion that the Court based a conclusion that the three movants lacked standing to assert the alleged rights of non-party subpoena recipients only on the factual assumption that the non-parties would not face practical obstacles in asserting their own rights in view of the fact that some of them opposed subpoenas in this Court and in the Northern District of California and that the factual assumption was incorrect. But "Tegel" has this all wrong.

First, it was the John Doe movants who had the obligation to establish their standing to assert the alleged rights of the non-party subpoena recipients.[1] The Court held that they utterly failed to do so. That alone is dispositive.

Second, "Tegel"'s assertion that none of the non-parties challenged the subpoena either in the Southern District of New York or in the Northern District of California is misleading. Laura Belanger and John Rodgers both filed motions to quash the substantially identical Google subpoena in both districts. *Chevron Corp. v. Donziger*, 11 Civ. 0691 (LAK) (S.D.N.Y.), docket items 591, 592: *Chevron Corp. v. Salazar*, 11-MC-80237 (CRB) (N.D. Cal.), docket items

---

[1]     Indeed, movants each bore "the burden of establishing standing." *E.g., Hedges v. Obama*, Nos. 12-3176(L), 12-3644 (Con), 2013 WL 3717774, at *11 (2d Cir. July 17, 2013) (citing *Clapper v. Amnesty Int'l USA*, —— U.S. ——, ——, 133 S.Ct. 1138, 1146 (2013)). In order to establish standing, a litigant invoking the judicial power of the United States must demonstrate, *inter alia,* "an invasion of a legally protected interest." *Hedges,* 2013 WL 3717774, at *11 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Having failed to establish that they had any legal interest protected by the First Amendment, they failed to establish the existence of Article III standing. Moreover, having failed to establish the existence of the prerequisites to third party standing, their claim to assert the alleged rights of non-party subpoena recipients failed.

18, 19.  In addition, Ms. Belanger filed objections to a motion to compel compliance with the Google subpoena in *Chevron Corp. v. Salazar*, 11-MC-80217 (CRB) (N.D. Cal.), docket item 23.

       5.    This leaves reconsideration of "Tegel"'s position in light of his belated claim that he is a U.S. citizen and thus enjoys the protection of the First Amendment.  The Court of course recognizes that the First Amendment affords protection for anonymous speech.  For reasons set forth in the supplement to this order that is being filed under seal, that protection is not implicated with respect to "Tegel."

       6.    "Tegel" is correct that the First Amendment protects private association.  But that protection has limited application to this motion.  In the first instance, disclosing the IP addresses associated with "Tegel"'s account would not chill "Tegel"'s association with Amazon Watch because Chevron already is well aware that "Tegel" actively associated himself with Amazon Watch and its founder, Steven Donziger.  Furthermore, there are multiple emails currently on the public record that evidence "Tegel"'s collaboration with Amazon Watch.[2]

       The right to private association is inapplicable also because the First Amendment does not shield fraud.  Chevron has submitted multiple emails from "Tegel" discussing the organization of media efforts to portray the Ecuadorian litigation as legitimate and the Cabrera report as independent.[3]  As Chevron explains in its briefing, there is substantial evidence that the litigation was tainted by fraud and, relatedly, that the Cabrera report was not independent.  Whether and how the defendants in that action and co-conspirators engaged in a media campaign to pressure Chevron into settling the allegedly fraudulent litigation in Ecuador is quite relevant to Chevron's RICO claims.  The IP address logs are pertinent to exploring this issue.

       Not all of the subpoenaed information, however, is significant.  Chevron appears to allege that "Tegel" was involved in the alleged fraud only from 2005 through 2008.  Disclosure of the IP address logs for the periods before 2005 and after 2008 possibly could yield relevant information, but Chevron has offered no argument why it has any compelling need for those IP logs.  Allowing disclosure of the IP address information for any period other than 2005 through 2008 could intrude upon certain protected activities in which "Tegel" may have engaged.

*   *   *

       Accordingly, the motion for reconsideration is granted to the extent that the Court reconsiders the order with respect to so much of the motion by which "Tegel" sought to quash the

---

[2]

    DI 39-3, 4.

[3]

    *See id.*

4

subpoena insofar as it sought information with respect to the email address
simeontegel@hotmail.com and denied in all other respects.  On that limited reconsideration, the
motion to quash is granted to the extent that Microsoft shall not disclose any of the subpoenaed
information with respect to the email address simeontegel@hotmail.com other than for the years
2005 through 2008.  The motion to quash is denied in all other respects.[4]

       SO ORDERED.

Dated:       July 29, 2013

                                   Lewis A. Kaplan
                        United States District Judge

---

[4]   The Court notes also that the three "John Does," including "Tegel," filed a notice of appeal
on July 18, 2013, nine days after "Tegel" moved for reconsideration.  The pendency of a
motion to alter or amend a judgment under Rule 59, among other post-judgment motions,
renders a notice of appeal from the judgment premature until the motion is determined in
the district court.  *See* FED. R. APP. P. 4(a)(4).  While "Tegel"'s motion cites only N.D.N.Y.
Rule 7.1, the Court construes Appellate Rule 4(a)(4) to apply to such a motion as well.  In
any case, the Court has the authority to decide the motion.