**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHEVRON CORP.,

                    Plaintiffs,

       -against-

                              Case No. 1:12-mc-00065 LAK/CFH

                              Hon. Lewis A. Kaplan

STEVEN DONZIGER, _et al._,

                    Defendants.

_____

**APPLICATION FOR STAY OF ENFORCEMENT PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62, and its inherent authority to stay its rulings pending appeal, the Non-Party Movants respectfully request relief from the Court's June 25, 2013 Order Granting in Part and Denying in Part Motions to Quash Subpoena and July 29, 2013 Order Granting Reconsideration in Part ("Orders"). ECF Nos. 50, 57.

Relief is needed because compliance with the subpoena could moot the pending appeal and because Chevron is threatening the ISP holding the information with contempt. In addition, the information sought here is at best tangentially relevant to the underlying claims, which go to trial on October 15, 2013.

Plaintiff here seeks two things: 1) confirmation of identities that it has repeatedly claimed it already knows and can prove, and 2) location information for nonparties that is highly unlikely to still exist and is not likely to lead to the discovery of admissible evidence since additional discovery would be needed to tie the location to defendants and discovery is closed. Neither is a compelling interest. Instead, Chevron's insistence on production at this late date seems aimed at intimidating the non-parties who assisted or were sympathetic to the positions of the defendants in the underlying matter, rather than seeking any information that is important to their case. On the other hand, revelation of this information to Chevron will both violate Movants' First Amendment speech and associational rights and be an irreparable harm, since the information cannot be unlearned by Chevron. A stay to ensure that the appellate court can determine if this tactic is appropriate is warranted.

## I.       Introduction

On September 18, 2012, Chevron Corp. ("Chevron") issued a Rule 45 subpoena to non-party Microsoft Corporation ("Microsoft") in this Court, in support of *Chevron Corp. v. Donziger, et al.*, Case No. 11-cv-0691 (LAK), filed in the Southern District of New York on February 1, 2011. The subpoena seeks identity information and nine years' of detailed computer "IP logs" associated with 30 email addresses. The IP logs track the location of the users over time.

The Movants are not parties to the underlying case, but instead are environmental activists, journalists, bloggers, volunteers, interns, and attorneys who have worked (or associated with those who have worked) to expose and create accountability for the environmental harms caused in Ecuador by Chevron and its predecessor company, Texaco (the "Ecuador campaign"). Chevron admits that it obtained the email addresses largely from the hard drive of defendant Steven Donziger (Chevron Opp. (ECF No. 35 at 4), that it seeks the identity information for the 30 email addresses to connect those individuals with the "legal and public relations strategies" in the Ecuador campaign (Opp. at 1), and that it seeks the IP log information to track the location of participants the Ecuador campaign (Opp. at 19).

The Non-Party Movants moved to quash Chevron's subpoena because it (1) violates the Non-Party Movants' First Amendment rights to anonymous speech and association, and (2) is facially overbroad. ECF No. 2. This Court quashed Chevron's subpoena in part as to one of the email addresses owned Non-Party Movants. ECF No. 57.

Movants timely appealed on August 16, 2013.

Instead of scheduling a court conference with the assigned Magistrate Judge as required by the Northern District's Local Rule 7.1(b)(2), without engaging in any good faith meet and confer efforts, and despite the pending appeal, Chevron has moved to compel the ISPs to produce the information no later than October 15, 2013. ECF No. 61.

## II.   ARGUMENT

Courts consider four factors in determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [he] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties …; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 419 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 37 (2d Cir. 2010). The first two factors "are the most critical." *Nken*, 556 U.S. at 419.

To preserve the status quo, the Court should stay enforcement of its subpoena.[1] Absent a stay, movants will suffer irreparable constitutional harm: if their records are disclosed in the interim, their appeal could be mooted and their identities and location information will have been conveyed to Chevron and cannot be then unlearned by them, in violation of the First Amendment right to anonymity and right of association. By contrast, a stay will cause no harm to Chevron, especially since it claims it already knows the identity of the individuals and their IP addresses alone are of little assistance this close to trial. The public interest will be served by the preservation of constitutional rights pending full appellate consideration of the substantial issues this case presents. As such, the balance of hardships tips sharply in favor of staying enforcement of the Order until the Second Circuit can consider the important constitutional issues presented by the appeal.

### A.      Absent a Stay, Movants Will Suffer Irreparable Harm.

To be granted a stay, a petitioner must show a particularized harm, for example, that a petitioner be prejudiced in a way that might bar her from relief in the event that her appeal was ultimately successful. *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 448 (S.D.N.Y. 2010) (citing *Nken*, 556 U.S. at 435). Movants easily satisfy this requirement: if their ISPs are required to disclose the information, their privacy can never be fully regained and their constitutional rights will have been violated.

As Chevron has now asked this Court to compel compliance, a stay is necessary to prevent the disclosure of the information. If Microsoft is forced to disclose the requested information, Movants will suffer irreparable harm because their confidentiality will be lost forever. As one court observed in another context, "the irreparable harm to [movants] lies in the fact that 'once the documents are surrendered pursuant to [this Court's] order, confidentiality will be lost for all time. The status quo could never be restored . . . Failure to grant a stay will

---

[1] Chevron has, confusingly, asked that this Court order Microsoft to comply with this Court's orders upholding (in part) its subpoena, ECF No. 61 at 3, despite this Court not having directed any order to Microsoft.

entirely destroy appellants' rights to secure meaningful review.'" *Center for Int'l Environmental Law v. OUSTR*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)) (granting stay pending appeal in FOIA case); *see also, e.g., United States v. Phillip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("disclosure of privileged documents to an adverse party" constitutes "irreparable harm"). This case clearly meets the standard for irreparable harm.

B.     **This Case Presents Substantial Issues On Appeal.**

To satisfy the "substantial issues" factor, a petitioner "need not demonstrate that it is more likely than not that [it] will win on the merits"; rather, it must show "a liklihood of success on the merits" or that "sufficiently serious questions going to the merits to make them a fair ground for litigation" are raised by the appeal. *See Citigroup Global Markets*, 598 F.3d at 35. Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits." *Id.* at 37.

Movants unquestionably satisfy these tests as well: there are serious questions about the Court's underlying ruling in in four key ways. First, the Court erred by holding that there is an affirmative duty to plead citizenship in a First Amendment case, even in the absence of any party having challenged standing.  Second, the Court erred in holding that the anonymity of people using email addresses cannot be protected by the First Amendment. Third, it erred in holding that the individuals' associations with the Ecuador campaign are not protected by the First Amendment. Finally, the Court erred in finding that the subpoena as a whole could not be quashed, regardless of its validity and constitutionality, unless all those named in the subpoena participate in the motion to quash.

1.     **There is No Affirmative Requirement that Movants Plead Their Citizenship in a First Amendment Case.**

With no supporting authority, the Court here purports to create a new rule: movants must affirmatively plead their citizenship in a First Amendment case or risk summary dismissal. ECF No. 50 at 9-11. In the instant case, unlike in the cases cited by the Court, Chevron had not

challenged the Movants' standing. At the time of the Court's first Order, there was indeed no evidence one way or the other regarding Movants' residence or citizenship before the Court. Despite that fact, this Court erroneously held that Movants were foreigners not entitled to the protection of the First Amendment. *Id*. In the face of evidence to the contrary, the Court has reconsidered its ruling as to one of the Movants, *see* ECF No. 57, but has refused to consider whether Chevron's subpoena violates the rights of those individuals whose citizenship has not been plead. Allowing an unconstitutional subpoena to be enforced by a United States District Court based on the supposed citizenship of those effected is clear error.

### 2. Email Addresses Are Protected by the First Amendment Right to Speak Anonymously.

In sharp contrast to this settled case law, the Court erred by asserting, with no supporting authority, that the facts here do not implicate the First Amendment. ECF No. 57 at 3.

In the first published case addressing Internet anonymity of non-parties, *Doe v. 2theMart.com, Inc.*, the court observed, "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas," 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001); *see also Doe v. S.E.C.*, No. 11-cv-80209 CRB, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011) ("the Ninth Circuit [has] recognized a protectable speech interest in ISP subscriber information"). Notably, in both cases, as here, the question was when an ISP can be required to identify a user from an email address. Chevron's discovery is admittedly *precisely intended* to tie the Movants' specific identities to the content of their communications it already obtained from Mr. Donziger's hard drive, so that it can demonstrate their alleged role in the "legal and public relations strategies." Indeed, if the Movants' identities are not to be tied to their specific speech about Ecuador campaign, it is difficult to imagine how their identities qualify as "likely to lead to discoverable evidence" as required by Rule 26.[2]

---

[2] Chevron also seeks to have it both ways: claiming that it knows the identities of the individuals for purposes of saying that the individuals have no right to anonymity, even going so far as attempting to individually name them, while at the same time claiming that it does not know the

### 3. Chevron's Request for the IP Logs of Its Critics in Order to Inquire into the Critics' Associations Clearly Implicates Those Critics' Right to Free Association.

The Supreme Court has made clear that infringements on freedom of association may survive constitutional scrutiny only when they "serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). The Court erred in completely disregarding Non-Party Movants' constitutional interests based on a mere allegation that *others*, namely the parties Chevron chose to name as defendants, may have engaged fraud.

Here, however, the Court would allow Chevron to obtain information that Chevron admits that it seeks because of the participation of the Movants in a "media campaign." Allowing such discovery into such core First Amendment activity without engaging in the required First Amendment analysis is clear error.

### 4. The Court Erred in Noting that Chevron's Subpoena is Likely Overbroad but Failing to Require Chevron to Present Facts Necessary to Limit Them.

The Court noted that "[n]ot all of the subpoenaed information, however, is significant" and limited Chevron's subpoena as it applied to the owner of a single email address to the timeframe that Chevron had actually shown might be relevant, instead of the nine years' worth of information demanded by Chevron. ECF No. 57 at 3. But despite Chevron's failure to present the Court with the facts necessary to limit the subpoena in a similar manner for the remaining email addresses, the Court did not require Chevron to more narrowly tailor the subpoena. Particularly in light of the First Amendment and privacy interests at stake, the Court erred. *See Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,* 10 CV 2262 DRH ARL, 2013 WL 3094955 (E.D.N.Y. June 18, 2013) (once a party makes a prima facie case that a subpoena seeks

---

identities for purposes of whether they actually need the information. This inconsistency alone should be a basis for quashing the subpoena.

6

discovery into First Amendment protected activity, the burden seeks to the party seeking discovery to show a compelling need for the discovery).

> **5.  The Court's Finding that the Non-Party Movants Lack Third-Party Standing to Challenge Chevron's Subpoena as a Whole Is Contrary to the Law.**

Finally, the Court erred in finding that the Non-Party Movants could challenge Chevron's subpoena only as to the email addresses they own. It is well-settled law that, in First Amendment cases, there are "unique standing considerations" that tilt dramatically toward a finding of standing. *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (the First Amendment provides an "exception to the usual rules governing standing"). The subpoena clearly impacts speech – it was issued to identify and track the location of those who participated in the Ecuador campaign's "legal and public relations strategies" as to all of those whose information is sought. And the chilling effect of this strategy is clear even as to those who could not move to quash. As with other First Amendment cases, this unconstitutional subpoena should not be enforced by this Court regardless of who the movants are.

> **C.   Chevron Will Not Be Harmed Significantly By a Stay.**

The third factor the Court must consider in determining whether a stay is appropriate is whether issuance of the stay will substantially injure the other parties interested in the proceeding. *See, e.g., Nken*, 556 U.S. at 426. For two principal reasons, Chevron will not be harmed by a stay pending appeal.

First, Chevron has no pressing need for the information. As to the Movants' identities, Chevron has claimed that it already knows who the Movants are – repeatedly and confidently. Chevron has made no showing that it will be unable to carry its burden of proof with regard to these unnamed parties in the upcoming trial if needed (which seems unlikely, as Chevron need prove nothing regarding non-parties at trial). Even if Microsoft should happen to still have some fraction of the years-old data sought here, Chevron would need several additional steps to link

that information with the defendants in order to use it to support its conspiracy theories. Yet discovery is closed in the case and the trial is set for October 15. This information was sought just at the very end of discovery by Chevron, yet to be useful in even the most marginal way, it must be combined with additional information (to prove, for instance as Chevron suggests, that these accounts were actually used by Defendants in some way that is relevant to the conspiracy).

Second, the minimal impediment that a stay will cause to the investigation can be reduced further by Chevron seeking to expedite the appeal, something it has not done. *See e.g., Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Representative,* 240 F. Supp. 2d 21, 24 (D.D.C. 2003). "Weighing this . . . hardship against the total and immediate divestiture of [movants'] rights to have effective review in [the court of appeals]," there is no doubt that "the balance of hardship . . . favor[s] the issuance of a stay." *Providence Journal Co.*, 595 F.2d at 890. Because Petitioner would clearly suffer irreparable injury in the absence of a stay, while Chevron will suffer at most a minor inconvenience if this Court stays its Order, the balance of hardships tips sharply in favor of a stay pending appeal.

### D.      The Public Interest Favors a Stay.

The fourth stay factor the Court must consider in determining whether a stay is appropriate is whether issuance of the stay is in the public interest. *See, e.g., Nken*, 556 U.S. at 426. A compelling interest exists in protecting against the loss of constitutionally-protected rights. *See, e.g., Salinger v. Colting,* 607 F.3d 68, 82 (2d Cir. 2010).[3] While Chevron certainly

---

[3] *See also, e.g., Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (noting the "significant public interest in upholding First Amendment principles"); *Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (finding that a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms"); *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) (stating, in context of a request for injunctive relief, that "[t]he public interest ... favors plaintiffs' assertion of their First Amendment rights"); *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079

has an interest in seeking information relevant to its case, it has not even alleged, much less proven that this information is of more than marginal relevance to its case. In the absence of a specific showing of a compelling interest in this information that trumps the interest of the Movants in enjoying the protection of the constitution, the public interest favors preserving the status quo until a final determination of Movants claims has been made.

## III.   CONCLUSION

The four *Nken* factors weigh in favor of staying enforcement of this Court's subpoena pending appeal of its two Orders. Non-Party Movants have appealed those Orders and respectfully requests a stay of enforcement pending determination of its appeal.

Dated this 7th day of October, 2013 at San Francisco, California.

Respectfully submitted,

        /s/ Mitchell L. Stoltz
Mitchell L. Stoltz, Esq.
(Bar Roll No. 517844)
Nathan Cardozo, Esq.
(*pro hac vice* pending)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Marco Simons, Esq.
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

*Counsel for Non-Party John Doe Movants*

---

(6th Cir. 1994) (noting "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding the "strong public interest in protecting First Amendment values" favored preliminary injunctive relief).